BRETT A. AXELROD, ESQ. (Bar No. 168657)
NICHOLAS A. KOFFROTH, ESQ. (Bar No. 287854)
**FOX ROTHSCHILD LLP**
Constellation Place
10250 Constellation Blvd., Suite 900
Los Angeles, California 90067
Telephone: (310) 598-4150
Facsimile: (310) 556-9828
Email: baxelrod@foxrothschild.com
nkoffroth@foxrothschild.com
*Proposed Counsel for Debtors*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**NORTHERN DIVISION**

In re

ORCUTT RANCHO, LLC,

Debtor.

Case No. 9:21-bk-10412-MB

Chapter 11

**NOTICE OF MOTION AND EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS: (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING; (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS; (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED CREDITORS; (IV) MODIFYING THE AUTOMATIC STAY; AND (V) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Hearing Date: April 26, 2021
Hearing Time: 10:30 a.m. (Pacific Time)
Location: 1415 State Street
Santa Barbara, CA 93101

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

## NOTICE OF EMERGENCY MOTION

**PLEASE TAKE NOTICE** that, on April 26, 2021, at 10:30 a.m. (Pacific Time), the Court will hold a hearing (the "Hearing") on the *Emergency Motion for Interim and Final Orders: (I) Authorizing Debtor to Obtain Postpetition Financing; (II) Granting Liens and Superpriority Claims; (III) Granting Adequate Protection to Prepetition Secured Creditors; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* (the "Motion")[1] filed by Orcutt Rancho, LLC ("Orcutt" or the "Debtor"), the debtor and debtor in possession in the above-captioned chapter 11 case (the "Chapter 11 Case").

**PLEASE TAKE FURTHER NOTICE** that, due to the COVID-19 outbreak, the Honorable Martin R. Barash has suspended his prior telephonic hearing procedures. **Until further notice, and except as may be otherwise ordered by the Court, all hearings before Judge Barash will be conducted remotely using ZoomGov.**  Hearing participants and members of the public may view and listen to hearings before Judge Barash using ZoomGov free of charge. Video and audio connection information for each hearing will be provided on Judge Barash's publicly posted hearing calendar, which may be viewed online at: http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/default.aspx Individuals may appear by ZoomGov video and audio using a personal computer (equipped with camera, microphone and speaker), or a handheld mobile device (such as an iPhone).  Individuals may participate by ZoomGov audio only using a telephone (standard telephone charges may apply). Neither a Zoom nor a ZoomGov account are necessary to participate and no pre-registration is required.  The audio portion of each hearing will be recorded electronically by the Court and constitute its official record.

**PLEASE TAKE FURTHER NOTICE** that, as set forth more fully in the Motion, the Debtor  hereby moves, on an emergency basis, pursuant to §§ 105(a), 361, 362, 363, 364 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"),[2] Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule

---

[1] Unless otherwise defined herein, all capitalized terms have the definitions set forth in the Motion.

[2] Unless otherwise set forth herein, all references to "§" refer to a section of the Bankruptcy Code.

Active\121589980.v2-4/21/21

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

4001-2 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California ("LBR") for entry of an interim order (substantially in the form attached to the Motion as Exhibit "A," the "Interim Financing Order") and a final order (the "Final Financing Order" and together with the Interim Financing Order, the "Financing Orders") (i) authorizing the Debtor to enter into a senior secured, superpriority debtor-in-possession financing loan with Santa Maria DIP LLC (the "Lender"), in an (i)(a) interim amount not to exceed $457,068.00 to avoid immediate and irreparable harm (the "Initial Advance"), and (b) after a final hearing, a second advance amount up to $2,042,932.00 (the "Second Advance") for a total principal amount of not more than $2,500,000 (as amended, modified or otherwise in effect from time to time, the "Loan"), substantially on the terms set forth in the *Debtor-In-Possession Loan Agreement* dated April 19, 2021 (as amended, supplemented, or otherwise modified and in effect from time to time, the "DIP Loan Agreement,"[3] and together with all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to or in favor of the Lender, the "Loan Documents") attached as Exhibit "A" to the *First-Day Declaration of Gary Greenberg in Support of Emergency First Day Motion* (the "Greenberg Declaration") filed concurrently herewith and; (ii) granting the Liens and superpriority claims to the Lender as set forth in the DIP Loan Agreement; (iii) granting "adequate protection" to (a) Romspen Mortgage Limited Partnership, an Ontario limited partnership ("Romspen"), as holder of a first priority deed of trust on the Property (defined below), and (b) Apollo Development, LLC, a Colorado limited liability company ("Apollo"), as holder of a second priority deed of trust on the Property (defined below)[4]; (iv) granting the Lender senior liens on the Debtor's unencumbered property; (v) granting the Lender priming liens on the Debtor's encumbered property; (vi) modifying the automatic stay as imposed by § 362 to the extent necessary to implement and effectuate the terms of the DIP Loan Agreement and the Financing Orders; and (v) scheduling a final hearing to approve the relief requested herein on a final basis (the

---

[3] Capitalized terms used but not defined herein shall have the meanings given to them in the DIP Loan Agreement.

[4] In addition to its status as a secured creditor holding a second deed of trust, Apollo is also the majority member of the Debtor, and is, thus, an insider of the Debtor as that term is defined in § 101(31)(b).

Active\121589980.v2-4/21/21

1    "Final Hearing").

2    **PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice of Motion,

3   the Motion, the accompanying Memorandum Of Points And Authorities, the Greenberg

4   Declaration, supporting statements, arguments and representations of a counsel who will appear at

5   the hearing on the Motion, the record in this case and any other evidence properly brought before

6   the Court in all other matters of which this Court may properly take judicial notice.

7    **PLEASE TAKE FURTHER NOTICE** that any party opposing or responding to the

8   Motion may present such response (the "Response") at the Hearing.  A Response must be a

9   complete written or oral statement of all reasons in opposition to the Motion or in support,

10   declarations and copies of all evidence on which the responding party intends to rely, and any

11   responding memorandum of points and authorities.

12    **PLEASE TAKE FURTHER NOTICE** that, pursuant to LBR 9013-1(h), the failure to file

13   and serve a timely objection to the Motion may be deemed by the Court to be consent to the relief

14   requested therein.

15    DATED this 21st day of April 2021.

16           **FOX ROTHSCHILD LLP**

17           By: _____ */s/Brett Axelrod* _____

18             BRETT A. AXELROD, ESQ. (Bar No. 168657)

             NICHOLAS A. KOFFROTH, ESQ. (Bar No. 287854)

19             Constellation Place

20             10250 Constellation Blvd., Suite 900

             Los Angeles, California  90067

21             *Proposed Counsel for Debtor*

22

23

24

25

26

27

28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Active\121589980.v2-4/21/21

1

## TABLE OF CONTENTS

2   I.   Statement of Facts ...................................................................................2

3        A.   General Background .........................................................................2

4        B.   The Debtor's Historical Challenges to Development ...........................3

5        C.   The Prepetition Secured Creditors....................................................5

6        D.   Debtor's Need for the Loan and Efforts to Obtain It...........................6

7   II.  Bankruptcy Rule 4001 Statement.................................................................7

8   III. Jurisdiction...............................................................................................16

9   IV.  Relief Requested ......................................................................................16

10  V.   Legal Argument .......................................................................................16

11       A.   The Debtor Has Satisfied the Legal Requirements for Approval of the Loan

12            Under Sections 364(c) & (d) of the Bankruptcy Code. ......................16

13            1.   No Comparable Alternative To The Loan Is Currently Available...........18

14            2.   The Loan Is Necessary To Protect The Debtor's Estate. .........................20

15            3.   The Existing Secured Creditors Either Consent And/Or Are Adequately

16                 Protected. ..........................................................................22

17            4.   Debtor's Decision to Enter into the DIP Loan Agreement Is Supported

18                 by Sound Business Judgment. ....................................................23

19       B.   The Court Should Approve the Proposed Break-Up Fee.....................24

20       C.   The Court Should Modify the Automatic Stay and Waive Any Applicable Stay

21            To The Effectiveness Of Order. ......................................................26

22  VI.  Conclusion ..............................................................................................27

23

24

25

26

27

28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

i

Active\121589980.v2-4/21/21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 995 Fifth Ave. Assocs.*,
  96 B.R. 24 (Bankr. S.D.N.Y. 1989) ............................................................................25

*In re Ames Dept. Stores, Inc.*,
  115 B.R. 34 (Bankr. S.D.N.Y. 1990) ..............................................17, 18, 19, 21, 24

*Anchor Sav. Bank FSB v. Sky Valley. Inc.*,
  99 B.R. 117 (N.D. Ga. 1989) ......................................................................................18

*In re Aqua Assocs.*,
  123 B.R. 192 (Bankr. E.D. Pa. 1991) ...................................................................17, 18

*Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*,
  789 F.2d 1085 (4th Cir. 1986) .......................................................... 2, 1, 18, 19

*Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*,
  181 F.3d 527 (3d Cir. 1999) .......................................................................................25

*In re Case Engineered Lumber, Inc.*,
  No. 09–22499 (Bankr. N.D.Ga. Sept. 1, 2009)(J. Brizendine) ..................................25

*In re Crouse Group. Inc.*,
  71 B.R. 544 (Bankr. E.D. Pa. 1987) ...........................................................................17

*In re CXM, Inc.*,
  307 B.R. 94 (Bankr. N.D. Ill. 2004) ...........................................................................25

*In re Dan River, Inc.*,
  No. 04-10990 (Banker. N.D. Ga. Dec. 17, 2004) ......................................................25

*In re Defender Drug Stores. Inc.*,
  126 B.R. 76 (Bankr. D. Ariz. 1991), *aff'd.*, 145 B.R. 312 (B.A.P. 9th Cir. 1992) .....................17

*In re Ellingsen MacLean Oil Co.*,
  65 B.R. 358 (Bankr. W.D. Mich. 1986), <u>aff'd</u>, 834 F.2d 599 (6th Cir. 1987) ...........................20

*Harvis Trien & Beck, P.C. v. Federal Home Mortgage Corp. (In re Blackwood
  Assocs., L.P.)*,
  187 B.R. 856 (Bankr. E.D.N.Y. 1995) .......................................................................20

*In re Hupp Indus.*,
  140 B.R. 191 (Bankr. N.D. Ohio 1997) ......................................................................25

*In re Lake Burton Dev.*,
  LLC, 2010 WL 5563622 (Bankr. N.D. Ga. Mar. 18, 2010) .......................................25

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

*In re Marrose Corp.*,
   1992 WL 33848 (Bankr. S.D.N.Y. 1992) ........................................................25

*In re Reading Tube Indus.*,
   72 B.R. 329 (Bankr. E.D. Pa. 1987)..............................................................19

*In re Reliant Energy Channelview LP*,
   594 F.3d 200 (3d Cir. 2010) ........................................................................25

*In re Republic Airways Holdings Inc.*,
   No. 16-10429(SHL), 2016 WL 2616717 (Bankr. S.D.N.Y. May 4, 2016)..........18, 23

*Richmond Leasing Co. v. Capital Bank, N.A.*,
   762 F.2d 1303 (5th Cir. 1985) .....................................................................24

*In re Sky Valley, Inc.*,
   100 B.R. 107 (Bankr. N.D. Ga. 1998), *aff'd sub nom.*, *Anchor Sav. Bank*, 99 B.R. ...................19

*In re St. Mary Hospital*,
   86 B.R. 393 (Bankr. E.D. Pa. 1988)..............................................................17

*In re T Asset Acquisition Company, LLC*,
   No. 09-31853 (Bankr. C.D. Cal. Jan. 28, 2010) ................................................26

*In re Tama Beef Packing Inc.*,
   321 B.R. 469 (8th Cir. BAP 2005).................................................................25

*In re Trans World Airlines, Inc.*,
   163 B.R. 964 (Bankr. D. Del. 1994) ..............................................................24

*In re Verity Health System of California, Inc.*,
   No. 18-20151 (Bankr. C.D. Cal. Oct. 30, 2018).................................................26

*In re Women First Healthcare, Inc.*,
   332 B.R. 115 (Bankr. D. Del. 2005) .........................................................3, 5, 25

**Statutes**

11 U.S.C. § 364(c) ...................................................................... 14, 16, 17, 18

28 U.S.C. §§ 157 and 1334 ................................................................16

28 U.S.C. § 157(b) ..........................................................................16

28 U.S.C. §§ 1408 and 1409 ..............................................................16

28 U.S.C. § 1930(a) .........................................................................12

United States Code Title 11 §§ 105(a), 361, 362, 363, 364 and 507, 11 U.S.C. §§ 101
   *et seq.*....................................................................................1, 1

Active\121589980.v2-4/21/21

Bankruptcy Code .......................................................................... 1, 1, 9, 10, 12, 13, 14, 15, 17, 18

Bankruptcy Code (v) Sections 364(c)(2) and 364(d)(1) ..........................................................9, 10

Bankruptcy Code Chapter 11 ..................................... 1, 1, 2, 6, 8, 13, 14, 15, 17, 19, 21, 24, 25, 26

Bankruptcy Code Section 362 .................................................................... 2, 2, 10, 13, 26

Bankruptcy Code § 364 .................................................................... 17, 18, 19, 24

Bankruptcy Code §§ 364(a) and (b) ...........................................................................18

Bankruptcy Code Section 364(c)(1) ...........................................................................9, 13

Bankruptcy Code Section 364(c)(2) ...........................................................................13

Bankruptcy Code Sections 364(c) & (d) ...........................................................................16

Bankruptcy Code Section 364(d)(1).............................................................................13, 18

Bankruptcy Code Section 364(e).............................................................................10, 21, 22

Bankruptcy Rule 4001 .......................................................................................7

Bankruptcy Rule 4001(c) ...................................................................................16

Bankruptcy Rule 4001(c)(1)(B)..............................................................................7

Bankruptcy Rules 4001 and 6004.............................................................................26

Bankruptcy Rules 4001(c)(1)(B)(i) through (xi) ................................................................12

Bankruptcy Code Sections 503, 507, 546, and 726........................................................13

Bankruptcy Code Section 503(b)(1)..........................................................................9, 17

Bankruptcy Code Section 552(b).............................................................................15

USA Patriot Act (Title III of Pub. L. 107-56) (signed into law October 26, 2001) ........................11

**Other Authorities**

Federal Rules of Bankruptcy Procedure Rules 2002, 4001 and 9014 ...........................................1, 1

Local Bankruptcy Rules Rule 4001-2..........................................................................1, 1

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Active\121589980.v2-4/21/21

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1

## MEMORANDUM OF POINTS AND AUTHORITIES

Orcutt Rancho, LLC ("Orcutt" or "Debtor"), Debtor and Debtor in possession in the above-referenced chapter 11 cases (the "Chapter 11 Case"), hereby moves, on an emergency basis (the "Motion"), pursuant to §§ 105(a), 361, 362, 363, 364 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"),[1] Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California ("LBR") for entry of an interim order (substantially in the form attached hereto as Exhibit A, the "Interim Financing Order") and a final order (the "Final Financing Order" and together with the Interim Financing Order, the "Financing Orders") (i) authorizing the Debtor to enter into a senior secured, superpriority debtor-in-possession financing loan with Santa Maria DIP LLC (the "Lender"), in an (i)(a) interim amount not to exceed $457,068.00 to avoid immediate and irreparable harm (the "Initial Advance"), and (b) after a final hearing, a second advance amount up to $2,042,932.00 (the "Second Advance") for a total principal amount of not more than $2,500,000 (as amended, modified or otherwise in effect from time to time, the "Loan"), substantially on the terms set forth in the *Debtor-In-Possession Loan Agreement* dated April 19, 2021 (as amended, supplemented, or otherwise modified and in effect from time to time, the "DIP Loan Agreement,"[2] and together with all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to or in favor of the Lender, the "Loan Documents") attached as Exhibit "A" to the *First-Day Declaration of Gary Greenberg in Support of Emergency First Day Motion* (the "Greenberg Declaration") filed concurrently herewith and; (ii) granting the Liens and superpriority claims to the Lender as set forth in the DIP Loan Agreement; (iii) granting "adequate protection" to (a) Romspen Mortgage Limited Partnership, an Ontario limited partnership ("Romspen"), as holder of a first priority deed of trust on the Property (defined below), and (b) Apollo Development, LLC, a Colorado limited liability company ("Apollo"), as holder of a second priority deed of trust on the

---

[1] Unless otherwise set forth herein, all references to "§" refer to a section of the Bankruptcy Code.

[2] Capitalized terms used but not defined herein shall have the meanings given to them in the DIP Loan Agreement.

1

1
2
3
4
5

Property (defined below)[3]; (iv) granting the Lender senior liens on the Debtor's unencumbered property; (v) granting the Lender priming liens on the Debtor's encumbered property; (vi) modifying the automatic stay as imposed by § 362 to the extent necessary to implement and effectuate the terms of the DIP Loan Agreement and the Financing Orders; and (v) scheduling a final hearing to approve the relief requested herein on a final basis (the "<u>Final Hearing</u>").

6
7
8
9
10

Debtor seek authorization for the Loan in order to provide funding and liquidity for the ongoing operation of Orcutt's business and to fund the expenses of the Chapter 11 Case. A copy of the *Debtor-In-Possession Loan Agreement* (the "<u>DIP Loan Agreement</u>")[4] is attached as **Exhibit "A"** to the *First-Day Declaration of Gary Greenberg in Support of Emergency First Day Motion* (the "<u>Greenberg Declaration</u>"), filed concurrently herewith and in support hereof.

11

**I.**

12

**STATEMENT OF FACTS**

13

A.    **General Background**

14
15
16
17
18

1.    On April 20, 2021 (the "<u>Petition Date</u>"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is continuing in possession of its property and operating and managing its business, as debtor in possession, pursuant to §§ 1107 and 1108. *See, generally*, Docket. No request has been made for the appointment of a trustee or examiner and no Committee has been appointed. *See id.*

19
20
21

2.    The factual background relating to Debtor's commencement of the Chapter 11 Case is set forth in detail in the *Omnibus Declaration of Gary Greenberg* and is incorporated for all purposes herein by this reference.

22
23

3.    The Debtor, Orcutt Rancho, LLC, is a Colorado limited liability corporation, formed, in part, to acquire and entitle three parcels of land in the unincorporated town of Orcutt, California,

24

---

25
26

[3] In addition to its status as a secured creditor holding a second deed of trust, Apollo is also the majority member of the Debtor, and is, thus, an insider of the Debtor as that term is defined in § 101(31)(b).

27
28

[4] Capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the DIP Loan Agreement.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

2

which is located in northern Santa Barbara County.  *See* Greenberg Decl., at ¶ 9.  The Debtor's original members were Apollo Development, LLC, The HMW Group, LTD. LLC, and Capital Pacific Development Group, Inc.  *See id.*  Effective August 18, 2020, Capital Pacific Development Group, Inc. resigned as a member of the Debtor.  *See id.*

**B.**    **The Debtor's Historical Challenges to Development**

4.    The Debtor acquired title to the three non-contiguous parcels that comprise the Property in November 2016.  *See* Greenberg Decl., at ¶ 16.  The Property is identified by the Orcutt Community Plan as a 189.2-acre portion of Key Site 21, a larger 340.78-acre site.  *See id.*  Collectively, the Property is currently zoned for a residential subdivision of up to 150 single family homes.  *See id.*  The remaining 151.58 acres of Key Site 21 is occupied by the 129.62-acre Rancho Maria Golf Club (the "Golf Course"), a public golf course operated by Rancho Maria Golf Club, Inc., and designated open space.  *See id.*

5.    As currently proposed, the Debtor intends to entitle the Property for two distinct neighborhoods surrounding the Golf Course, with separate access, totaling 129 homes.  *See id.*, at ¶ 19.  *First*, the Hidden Canyon neighborhood will consist of 54 lots with average lot sizes of approximately 10,000 and 12,000 square feet.  *See id.*  *Second*, Willow Creek will consist of 75 lots with average lot sizes of approximately 8,000 square feet.  *See id.*  The entitlement process for each of the two neighborhoods involves unique challenges, the most distinct of which is access to a public right-of-way.  *See id.*  While the Hidden Creek development abuts California Highway 1, the Willow Creek development is "land-locked" by the Golf Course.  *See id.*

6.    Prior to the Debtor's acquisition of the Property, the previous owner of the Property, the Erich Joseph Employees' Pension Trust (the "Trust"), filed a complaint against the Golf Course in the California Superior Court for the County of Santa Barbara, Case No. 13cv91010 (the "2013 Action").  *See id.*, at ¶ 17.  In the 2013 Action, the Trust asserted causes of action against the Golf Course for trespass, ejectment, quiet title, declaratory relief, and injunctive relief because the Golf Course constructed portions of the course and related amenities on the Property.  *See id.*  The Golf Course filed a cross-complaint based on alleged right to use the Property by virtue of permissive easement.  *See id.*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

3

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

7.      On September 12, 2013, the Trust and the Golf Course entered into that certain Settlement Agreement.  *See id.*, at ¶ 18.  In relevant part, the Settlement Agreement resolved the 2013 Action, granted the Trust and its successors a permanent easement for primary ingress and egress to California Highway 1 along the western border of the Golf Course that was specifically intended to accommodate a future residential subdivision in the area now planned for the Willow Creek development (as well as an easement for secondary emergency access), and granted the Golf Course an easement over the Property for limited, pre-existing encroachments.  *See id.*

8.      Notwithstanding the Settlement Agreement, the Debtor's post-acquisition efforts to entitle the Property has been met with obstinate opposition by the Golf Course and continued encroachment on the Debtor's Property.  On August 6, 2019, the Golf Course filed a complaint in the California Superior Court for the County of Santa Barbara, Case No. 19cv04167 (the "2019 Action") against, among others, the Debtor and Romspen—about the same time as the Romspen loan maturity.  *See id.*, at ¶ 21.  The 2019 Action raises claims for quiet title, adverse possession, prescriptive easement, trespass, and declaratory relief.  *See id.*  More plainly, in the 2019 Action, the Golf Course again seeks to assert rights to the Debtor's Property—in certain cases rights that were already arguably addressed in the Settlement Agreement and subject to the releases set forth therein—based on the Golf Course's encroachments on the Property.  The Golf Course recorded a lis pendens in connection with the 2019 Action, which, as set forth below, has hampered the Debtor's efforts to refinance the Property.  *See id.*, at ¶ 23.  Further, the Golf Course has subverted the public hearing process before the Planning Commission to delay approval of the proposed entitlements for the Property.  *See id.*, at ¶ 22.  Throughout 2020 and 2021, the Golf Course appeared and submitted argument before the Planning Commission that has resulted in material project delays.  *See id.*

9.      The Golf Course has leveraged the 2019 Action and its delay tactics before the Planning Commission in an effort to extract substantial concessions from the Debtor in yet another settlement agreement.  On July 7, 2020, Romspen filed a notice of default and filed a notice of foreclosure sale, which was originally scheduled for October 7, 2020.  *See id.*, at ¶ 24.  Prior to June 1, 2019, the maturity date of the Romspen loan, and on a continuing exhaustive efforts basis, the

4

Debtor prepared marketing materials to solicit a potential refinancing lender, covering the market of refinance lenders known to the Debtor's principals and advisors. *See id.* The Debtor obtained indications of interest for potential refinance lenders and, in some cases, term sheets. *See id.* In 2019 concurrent with the maturity of the Romspen loan, and again in early 2021, the Debtor identified a two potential refinancing lender and entered into negotiations, which in the first instance resulted in a loan commitment and in the second instance resulted in draft definitive refinancing documents. *See id.* However, as a result of the COVID-19 pandemic, in the first instance, and the lis pendens related to the 2019 Action, in the second instance, the potential refinancing lender was unable to complete refinancing deal and the transaction did not move forward. *See id.*

10. The Debtor obtained forbearance of the Romspen loan during this period by paying $150,000 in three monthly payments of $50,000 per month from August 2020 through October 2020. *See id.*, at ¶ 25. On March 2, 2021, Romspen filed a notice of foreclosure sale scheduled for April 7, 2021. *See id.* As of the Petition Date, the foreclosure sale was rescheduled for April 21, 2021. *See id.* Throughout this period, the Debtor attempted to unsuccessfully settle the 2019 Action, which settlement efforts were continually frustrated by the Golf Course. *See id.* While the parties entered into settlement negotiations, each successive (and purportedly "final") draft of settlement terms has been amended by the Golf Course to extract further concessions from the Debtor. *See id.*, at ¶ 23. As of the Petition Date, the parties have not signed a settlement agreement related to the 2019 Action. *See id.*

## C.   The Prepetition Secured Creditors

11. The Property is encumbered by two deeds of trust in favor of the Debtor's two prepetition secured creditors (collectively, the "Prepetition Secured Creditors"). *See id.*, at ¶ 13. ***First***, Romspen holds a first priority deed of trust dated November 18, 2016 in the principal amount of approximately $5.3 million. *See id.* Pursuant to the notice of default, recorded on July 7, 2020, Romspen asserts a total secured claim in the amount of $8,235,077.11. *See id.* On March 2, 2021, Romspen recorded a notice of foreclosure sale, which is currently scheduled for April 21, 2021. *See id.* ***Second***, the Debtor's majority member, Apollo, holds a second priority deed of trust dated

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

5

1  November 28, 2016 (as amended) in the principal amount of approximately $2,164,850. *See id.*

2  ## D.  Debtor's Need for the Loan and Efforts to Obtain It.

3      12.    As described in greater detail in the Greenberg Declaration, Orcutt needs to obtain

4  funds in order to administer and preserve the value of its estate through continued entitlement

5  efforts and to propose a plan of reorganization.  The Debtor does not generate revenue from

6  operations, is unable to obtain further equity investment, and, as set forth above, the Debtor's efforts

7  to refinance the Romspen mortgage have been thwarted. *See id.*, at ¶ 15.  During this time allocated

8  to reorganizing the Debtors' business, the Debtor requires additional cash mainly to fund day-to-day

9  operations, pursue entitlement of the Property, and maintain and preserve the value of the Property

10  for the benefit of the Debtor's estate and creditors, including the Prepetition Secured Creditors. *See*

11  *id.*, at ¶¶ 29-33.  The availability to the Debtors of sufficient working capital and liquidity to finance

12  their operations is vital to their ability to maintain such operations and is necessary for the

13  preservation of the value of the estate as a whole, pending the completion of the entitlement

14  process, which the Debtor anticipates will be completed within 18 months. *See id.*, at ¶¶ 27, 32.

15  The Debtor must also pay expenses associated with the Chapter 11 Case, including professional and

16  United States Trustee fees.

17      13.    The Debtor has made significant efforts to obtain postpetition financing.  Debtor

18  entered into preliminary negotiations for postpetition financing with three potential lenders. *See id.*,

19  at ¶¶ 34-35.  In early April 2021, the Debtor's presumptive postpetition lender, with whom the

20  Debtor had negotiated a term sheet, withdrew its offer. *See id.*  Subsequently, the Debtor contacted

21  several potential postpetition lenders, and, following negotiations, entered into a term sheet with the

22  Lender. *See id.*  Each of the prospective lenders were given access to the data room. *See id.*  In the

23  end, the Debtor received only one, fully executed offer—the proposed DIP Loan (as defined below)

24  from the Lender (collectively, the "DIP Loan Offer"). *See id.*

25      14.    In order to ensure that Orcutt will have sufficient liquidity to fund the costs of

26  administering its Chapter 11 Case, and to confirm a plan of reorganization, Orcutt believes that it

27  will require $2.5 million in postpetition financing. *See id.*, at ¶¶ 34-35.  With these funding

28  requirements in mind, Orcutt negotiated the DIP Loan Agreement with the Lender, which provides

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

6

Active\121589980.v2-4/21/21

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

for a commitment of $2.5 million in Loan funds of which the Debtor may utilize up to $457,068.00 to fund operations on an interim basis following interim approval from the Court. *See id.*, Ex. A (DIP Loan Agmt., § 2(b) at 8).

## II.    BANKRUPTCY RULE 4001 STATEMENT

15.    In compliance with Bankruptcy Rule 4001(c)(1)(B) and LBR 4001-2, the Debtor provides the following additional information regarding the proposed Loan.[5]    Nothing in the following summary alters or amends the terms of the DIP Loan Agreement or the Financing Orders, and to the extent of any conflict between the following summary and the DIP Loan Agreement or Financing Orders, the DIP Loan Agreement or the Financing Orders, as applicable, shall control:

| | |
|---|---|
| **Borrowers**<br>DIP Loan Agreement, Preamble; Financing Order, at 1 | Orcutt Rancho, LLC |
| **Guarantor** | None |
| **Lender**<br>DIP Loan Agreement, Preamble; Financing Order, at 1 | Santa Maria DIP LLC |
| **Loan Amount & Advances**<br>DIP Loan Agreement, § 2(b) at 8 | Subject to the satisfaction of the conditions precedent set forth in Section 5 of the DIP Loan Agreement, in Lender's sole and absolute discretion, the Loan proceeds in the total amount of $2,500,000 shall be advanced by Lender to Borrower as follows:<br><br>1.  The Initial Advance in the amount of $457,068.00 (less any fees, costs and expenses due Lender under the DIP Loan Agreement which will be net funded) shall be funded within two (2) Business Days of the Bankruptcy Court entering the Interim Financing Order.<br><br>2.  The Second Advance in an amount not to exceed $2,042,932.00 (less any fees, costs and expenses due Lender under the DIP Loan Agreement which will be net funded) shall be funded within two (2) Business Days of the Final Financing Order becoming a final, non-appealable order in the Bankruptcy Case. |
| **Interest Rate**<br>DIP Loan Agreement, § 1 at 5, § 2(i) at 9, § 3(b)(ii) at 13; | Fifteen percent (15%) per annum, computed based on a 360-day year and charged on the basis of actual days elapsed.  Interest at the Accrual Rate (a portion of the Interest Rate equal to three percent (3%) per annum) |

---

[5] Pursuant to LBR 4001-2, the Debtor filed the *Statement Regarding Cash Collateral or Debtor In Possession Financing [FRBP 4001; LBR 4001-2]* concurrently herewith.

7

Financing Order, ¶ 3 at 9.    shall accrue during the term of the Loan.

**Closing Date**
DIP Loan Agreement, § 1 at 3    The date of funding of the Initial Advance, which, as set forth above, shall take place within two (2) Business Days of the Bankruptcy Court entering the Interim Financing Order.

**Funding Conditions**
DIP Loan Agreement, § 5 at 15-18    The obligation of Lender to make the Loan or make any Advance to the Debtor is subject to satisfaction of each of the following (unless otherwise waived in writing by Lender):

1. <u>DIP Loan Agreement</u>.  Debtor and Lender shall have executed (to the extent applicable) and/or delivered, or caused to be delivered, to Lender (i) this DIP Loan Agreement, (ii) each Loan Document, (iii) any other documents reasonably required by Lender to evidence the Liens on the Collateral (subject to the Carve Out as set forth herein) or other customary closing deliverables and (iv) a notice of pendency of the Chapter 11 Case and the subordination of interests as ordered by the Bankruptcy Court in the Financing Orders in a form appropriate for recordation in Santa Barbara County, State of California, and in the case of (i) through (iv), each in form acceptable to Lender in its sole and absolute discretion.

2. <u>Approvals</u>.   Lender shall have received satisfactory evidence that Debtor has obtained all required consents and approvals of all Persons in connection with the filing of the Chapter 11 Case, the execution, delivery and performance of the Loan Documents, and there shall not be any pending or threatened litigation, governmental, administrative or judicial action that could reasonably be expected to restrain, prevent or impose burdensome conditions on the transactions contemplated hereby.

3. <u>DIP Motion</u>.  Lender shall have approved the DIP Motion filed in the Chapter 11 Case.

4. <u>Financing Orders</u>.

   a.  With respect to the obligation of Lender to make the Initial Advance to the Debtor, an order of the Bankruptcy Court in the Bankruptcy Case, in form and substance satisfactory to Lender in its sole and absolute discretion, (i) approving the Debtor obtaining the Initial Advance and the Loan Documents on an interim basis, (ii) granting the Collateral described in this DIP Loan Agreement, and (iii) setting a final hearing within twenty (20) days of the entry of the Interim Financing Order to enter the Final Financing Order approving the Loan and the Loan Documents (the "<u>Interim Financing Order</u>") shall have been entered by the Bankruptcy Court, which Interim Financing Order shall not have been vacated, reversed or stayed, or modified or amended, without the prior written consent of Lender. The Interim Financing Order shall provide, among other things, that:  (i) notice of the DIP Motion

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Active\121589980.v2-4/21/21

was provided as required under applicable Bankruptcy Laws; (ii) the Loan Documents with respect to the Initial Advance are approved by the Bankruptcy Court in their present form without revision (except as may be consented to by Lender prior to such approval but without any obligation to do so); (iii) the execution, delivery and performance of this DIP Loan Agreement by the Debtor with respect to the Initial Advance is authorized; (iv) the Bankruptcy Court shall have found that the Loan Documents constitute valid and enforceable obligations of Debtor and that the payment and performance of the obligations of Debtor under the Loan Documents with respect to the Initial Advance shall constitute (x) an unsecured credit obtained pursuant to Section 364(c)(1) of the Bankruptcy Code, allowable under Section 503(b)(1) of the Bankruptcy Code and having priority over any and all administrative expenses of the kind specified in, or ordered pursuant to Sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 726 or any other provisions of the Bankruptcy Code, but not collectible from Avoidance Actions or the proceeds thereof, and (y) a senior secured, super priority loan as set forth herein pursuant to Sections 364(c)(2) and 364(d)(1) of the Bankruptcy Code, (v) the Loan Fee and other closing expenses are approved; and (vi) the Initial Advance may be consummated immediately upon the entry of the Interim Financing Order.

b.  With respect to the obligation of Lender to make the Second Advance to the Debtor, a final non-appealable order of the Bankruptcy Court in the Bankruptcy Case, in form and substance satisfactory to Lender in its sole and absolute discretion, approving the Loan and the Loan Documents (the "Final Financing Order") shall have been entered by the Bankruptcy Court, which Final Financing Order shall not have been vacated, reversed or stayed, or modified or amended, without the prior written consent of Lender. The Final Financing Order shall provide, among other things, that: (i) notice of the DIP Motion was provided as required under applicable Bankruptcy Laws; (ii) the Loan Documents are approved by the Bankruptcy Court in their present form without revision (except as may be consented to by Lender prior to such approval but without any obligation to do so); (iii) the execution, delivery and performance of this DIP Loan Agreement by the Debtor is authorized; (iv) the Bankruptcy Court shall have found that the Loan Documents constitute valid and enforceable obligations of Debtor and that the payment and performance of the obligations of Debtor under the Loan Documents shall constitute (x) an unsecured credit obtained pursuant to Section 364(c)(1) of the Bankruptcy Code, allowable under Section 503(b)(1) of the Bankruptcy Code and having priority over any and all administrative expenses of the kind specified in, or ordered pursuant to Sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 726 or any other provisions of the Bankruptcy Code, but not

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

9

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

collectible from Avoidance Actions or the proceeds thereof, and (y) a senior secured, super priority loan as set forth herein pursuant to Sections 364(c)(2) and 364(d)(1) of the Bankruptcy Code; (v) that Debtor shall not be entitled to seek other or further financing under Sections 364(b), (c), or (d) of the Bankruptcy Code, whether having priority, subordinated, unsecured or secured, unless either (A) the payment and performance Obligations to Lender under the Loan Documents have been paid and performed in full or (B) Lender has consented thereto in writing (but without any obligation to do so); (vi) the validity, enforceability and priority of the payment and performance obligations to Lender by Debtor with respect to the Loan and the Loan Documents shall not be impaired or otherwise adversely affected in any manner; (vii) the Bankruptcy Court's finding that Lender is entitled to the protections of Section 364(e) of the Bankruptcy Code as Lender has negotiated in good faith with Debtor and has entered into the Loan Documents and has extended credit hereunder in good faith; (viii) the Loan Fee and other closing expenses are approved; and (ix) the Initial Advance may be consummated immediately upon the entry of the Interim Financing Order and the Second Advance may be consummated immediately upon entry of the Final Financing Order unless an order of stay is entered prior to any such Initial Advance or Second Advance is consummated.

5.   <u>Automatic Stay</u>.  The automatic stay of Section 362 of the Bankruptcy Code shall have been modified, amended, annulled and terminated: (i) to permit the creation and perfection of Lender's Liens and security interests, as more fully set forth in the Financing Orders and (ii) to permit Lender's enforcement of all rights and remedies granted to Lender under the Loan Documents, the Financing Orders and applicable state and federal law, including without limitation the exercise of any prejudgment remedies by Lender and foreclosure by Lender under the Loan Documents upon an Event of Default under the Loan Documents, all without further order of the Bankruptcy Court.

6.   <u>Required Documentation</u>.  Lender shall have received the following supporting documents with respect to Debtor: (i) a copy of its articles of organization certified as of a date reasonably close to the Closing Date to be a true and accurate copy by the Secretary of State of Colorado, (ii) a certificate of the Secretary of State of Colorado, dated as of a date reasonably close to the Closing Date, as to its existence and (if available) good standing, (iii) a certificate of the Secretary of State of California, dated as of a date reasonably close to the Closing Date, as to its foreign qualification and (if available) good standing, (iv) a copy of its operating agreement (as applicable), certified by its secretary or assistant secretary, manager or other appropriate Person (as applicable) to be a true and accurate copy of its operating agreement (as applicable) in effect on the Closing Date (except as otherwise provided below), (v) a copy of resolutions of its members or manager or similar governing body, as applicable certified to be true

10

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

and correct copies thereof duly adopted, approved or otherwise delivered by such members or manager or similar governing body (to the extent necessary and applicable), each of which is certified to be in full force and effect on the Closing Date, authorizing the execution and delivery by it of the Loan Documents delivered on the Closing Date to which it is a party and the performance by it of all its obligations thereunder, and (vi) such additional supporting documents and other information with respect to its operations and affairs as Lender may reasonably request.

7. <u>USA Patriot Act</u>.  Such information on the principals of the Debtor as Lender believes is prudent to ensure compliance with the USA Patriot Act (Title III of Pub. L. 107-56) (signed into law October 26, 2001). Lender hereby notifies Debtor that, pursuant to the requirements of the Act, it is required to obtain, verify and record the name and address of Debtor and other information that will allow Lender to identify Debtor in accordance with the Act..

8. <u>Budget</u>. Debtor shall have delivered to Lender a budget setting forth Debtor's anticipated operating costs with respect to Debtor's business (the "<u>Budget</u>"), which Budget shall be in form and content acceptable to Lender and for a time period acceptable to Lender, each in Lender's sole and absolute discretion, and approved in writing by Lender.

| | |
|---|---|
| **Maturity**<br>DIP Loan Agreement, § 1 at 6, § 2(g) at 9 | The earlier of (a) October 31, 2022, or (b) the date of acceleration of any of the Obligations pursuant to Section 10(a) of the DIP Loan Agreement. |
| **Use of Proceeds**<br>DIP Loan Agreement, § 7(k) at 24 | Borrower shall not be permitted to use proceeds of the Loan (i) to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation challenging the amount, validity, perfection, priority, extent or enforceability of, or to assert any defense, counterclaims or offset to, the Liens granted pursuant thereto, the Obligations or the Liens and security interests of Lender on or in the Collateral, (ii) to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation against Lender or (iii) to make any Restricted Payment. |
| **Fees**<br>DIP Loan Agreement, § 2(c) at 8; § 2(h) at 9 | Debtor shall pay Lender a loan fee for the Loan in the amount of Seventy-Five Thousand and No/100 Dollars ($75,000.00) (the "<u>Origination Fee</u>"). The Origination Fee shall be paid on the Closing Date from the funding of the Loan and shall be deemed fully earned, payable and non-refundable upon receipt by Lender.  Lender acknowledges that the Initial Fee paid by Debtor to Lender on or before the execution of the DIP Loan Agreement, shall be applied toward payment of the Origination Fee upon the Closing Date. |
| | Debtor shall pay Lender an exit fee for the Loan in the amount of Fifty Thousand and No/100 Dollars ($50,000.00) (the "<u>Exit Fee</u>"). The Exit Fee shall be due and payable on the earlier of (a) the date Debtor repays the Loan in full, or (b) the Maturity Date. |

11

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

**Break-Up Fee**
DIP Loan Agreement,
§ 2(o) at 12

Debtor shall pay Lender a break-up fee for the Loan in the amount of Fifty Thousand and No/100 Dollars ($50,000.00) (the "Break-Up Fee"). The Break-Up Fee shall be paid on the Closing Date from the funding of the Loan and shall be deemed fully earned, payable and non-refundable upon receipt by Lender. In the event the Loan is approved by the Bankruptcy Court and the Final Financing Order becomes a final, non-appealable order in the Bankruptcy Case as required under Section 5(d)(ii) below, Lender acknowledges that the Break-Up Fee shall be applied toward payment of the Interest Reserve upon the funding of the Second Advance.

**Carve Out**
DIP Loan Agreement,
§ 1 at 2

"Carve Out" means the following carve-out from the Liens granted hereunder and under the Financing Orders in an amount equal to: (i) all fees required to be paid under 28 U.S.C. § 1930(a); (ii) to the extent allowed at any time, whether by interim order, procedural order or otherwise, all unpaid fees and expenses accrued or incurred by Persons or firms retained by the Debtor and the Committee pursuant to Sections 327, 328 363 or 1103 of the Bankruptcy Code (collectively, the "Estate Professionals"; such fees and expenses, the "Estate's Professional Fees") at any time before the first Business Day following delivery by Lender of a Carve-Out Trigger Notice (the "Carve-Out Trigger Date"), whether allowed by the Bankruptcy Court prior to or after delivery of a Carve-Out Trigger Notice; and (iii) Estate's Professional Fees in an aggregate amount not to exceed $200,000 (the "Carve-Out Trigger Cap") incurred on or after the first business day following delivery by Lender of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order or otherwise. Any payment or reimbursement made on or after the Carve-Out Trigger Date on account of Estate's Professional Fees incurred on or after the first Business Day following delivery by Lender of the Carve-Out Trigger Notice shall permanently reduce the Carve-Out on a dollar-for-dollar basis. To the extent that any payment to an Estate's Professional is subsequently disallowed or disgorged, such amounts shall constitute Collateral for all purposes hereunder, subject to the Liens granted hereunder and under the Financing Orders. In no event shall any fee, expense or other amount incurred in connection with investigating or pursuing claims against Lender, or in objecting to any relief supported by Lender, be paid from the Carve-Out. Lender shall not be responsible for the direct payment or reimbursement of any Estate's Professional Fee. For the avoidance of doubt, nothing contained herein or in any Loan Document is intended to be or shall be construed as consent to the allowance of any Estate's Professional Fee.

### *Disclosure of Provisions Identified in Bankruptcy Rules 4001(c)(1)(B)(i) through (xi)*

**DIP Financing Liens**
DIP Loan Agreement,
§ 2(m) at 11
Financing Order, ¶¶ 9-

Debtor grants Lender liens:

1. pursuant to Section 364(c)(2) of the Bankruptcy Code, which shall at all times be secured by a valid, binding, continuing, enforceable and fully perfected first priority senior security interest in and Lien on all

12

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

| | | |
|---|---|---|
| 1 | 11 at 11 | Collateral that is not otherwise subject to a Lien; <u>provided</u>, <u>however</u>, that this Lien on the deposit accounts and Accounts of the Debtor shall be subject to the Carve Out; and |
| 2 | *FRBP 4001(c)(1)(B)(i)* | |
| 3 | | 2.   pursuant to Section 364(d)(1) of the Bankruptcy Code, which shall be secured by a valid, binding, continuing, enforceable and fully perfected first priority senior priming security interest in and senior priming Lien on all Collateral that is subject to existing Liens. |
| 4 | | |
| 5 | | |
| 6 | **DIP   Superpriority Claim** | Debtor grants Lender claims, pursuant to Section 364(c)(1) of the Bankruptcy Code, which shall at all times constitute allowed claims in the Chapter 11 Case having priority over any and all administrative expenses and all other claims against Debtor, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in Sections 503, 507, 546, and 726 of the Bankruptcy Code, <u>provided</u>, <u>however</u>, that such superpriority administrative claim shall be subject to the Carve Out and shall not be collectible from Avoidance Actions |
| 7 | DIP Loan Agreement, § 2(m) at 10-11; Financing Order,   ¶ 8 at 10 | |
| 8 | | |
| 9 | *FRBP 4001(c)(1)(B)(i)* | |
| 10 | | |
| 11 | **Adequate Protection** | So long as there is no Default or Event of Default under this Interim Financing Order, the DIP Loan Agreements, or any other Loan Document, the Debtor is authorized and directed to provide to the Prepetition Secured Creditors monthly adequate protection payments as set forth in the Budget in a monthly amount not greater than (i) $12,500 with respect to Romspen, and (ii) $5,000 with respect to Apollo (the "<u>Prepetition Adequate Protection Payments</u>").   Notwithstanding the foregoing, to the extent the Court enters a final and non-appealable order that determines, pursuant to sections 506(a) or (b) of the Bankruptcy Code, that the Prepetition Adequate Protection Payments are not properly allocable to interest on one or more of the respective Potential Liens to which they were made, the Prepetition Adequate Protection Payments may be re-characterized as payment(s) applied to the principal amount of the respective Potential Liens. |
| 12 | Financing Order, ¶ 15 at 13 | |
| 13 | *FRBP 4001(c)(1)(B)(ii)* | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | **Determination re Prepetition Claim** | None. |
| 21 | | |
| 22 | *FRBP 4001(c)(1)(B)(iii)* | |
| 23 | **Waiver of Automatic Stay** | The automatic stay of Section 362 of the Bankruptcy Code shall have been modified, amended, annulled and terminated: (i) to permit the creation and perfection of Lender's Liens and security interests, as more fully set forth in the Loan Documents and the Interim Financing Order and (ii) to permit Lender's enforcement of all rights and remedies granted to Lender under the Loan Documents, the Inteirm Financing Order and applicable state and federal law, including without limitation the exercise of any prejudgment remedies by Lender and foreclosure by Lender under the Loan Documents upon an Event of Default under the Loan |
| 24 | DIP Loan Agreement, § 5(e) at 17 Financing Order, ¶¶ 20-21 at 15 | |
| 25 | | |
| 26 | | |
| 27 | *FRBP 4001(c)(1)(B)(iv)* | |
| 28 | | |

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

| | | |
|---|---|---|
| 1 | | Documents, all without further order of the Bankruptcy Court. |
| 2 | **Waiver of Financing Rights** | Upon the Closing Date, on behalf of itself and its estates, and for so long as any Obligation shall be outstanding, Debtor hereby irrevocably waives |
| 3 | DIP Loan Agreement, § 2(m) at 11; § 8(n) at 28-29 | any right, pursuant to Sections 364(c) or 364(d) of the Bankruptcy Code or otherwise, to grant any Lien of equal or greater priority than the Lien securing the Obligations, or to approve or grant a claim of equal or greater priority than the Obligations. |
| 4 | Financing Order, ¶ 19 at 14-15 | |
| 5 | | |
| 6 | | |
| 7 | *FRBP 4001(c)(1)(B)(v)* | |
| 8 | **Confirmation Deadlines** | None. |
| 9 | | |
| 10 | *FRBP 4001(c)(1)(B)(vi)* | |
| 11 | **Modification of Nonbankruptcy Law** | The DIP Loan Agreement and the Financing Orders shall be sufficient and conclusive evidence of the validity, enforceability, perfection and |
| 12 | Financing Order, ¶ 12 at 12 | priority of the Liens authorized herein without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other |
| 13 | | instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect |
| 14 | *FRBP 4001(c)(1)(B)(vii)* | the Liens or to entitle the Liens to the priorities granted therein. |
| 15 | | |
| 16 | **Limitation of Estate Causes of Action** | The DIP Loan Agreement provides as events of default the occurrence of any of the following (among others) in the Chapter 11 Case: (i) Debtor |
| 17 | DIP Loan Agreement, § 8(n), 28-29 | (A) engages in or supports any challenge to the validity, perfection, priority, extent or enforceability of the Loan Document or the Liens on or |
| 18 | | security interests in the assets of Debtor securing the Obligations or (B) commences any actions or proceedings against Lender; (ii) Debtor files or |
| 19 | *FRBP 4001(c)(1)(B)(viii)* | commences any proceeding to surcharge Lender pursuant to Sections 105, 364 or 506(c) of the Bankruptcy Code; or (iii) the Committee commences |
| 20 | | any actions or proceedings against Lender. |
| 21 | | |
| 22 | **Indemnification** | The DIP Loan Agreement provides for an Hazardous Materials Indemnity and further provides that the Debtor agrees to indemnify and hold and |
| 23 | DIP Loan Agreement, § 7(j)(v) at 11, § 11 at 31 | save harmless Lender and its respective directors, officers, members, managers, employees, agents, attorneys, consultants, advisors, or |
| 24 | Financing Order, ¶¶ 27-28 at 17 | representatives (collectively, "Indemnitees") from and against any and all losses, damages, claims, actions, demands, liabilities or expenses of any |
| 25 | | kind whatsoever (including reasonable attorneys' fees and disbursements) incurred by or asserted or awarded against any Indemnitee (including in |
| 26 | *FRBP 4001(c)(1)(B)(ix)* | connection with any investigation, litigation or proceeding or the preparation of a defense in connection therewith) arising in any way |
| 27 | | directly or indirectly out of or based upon, in whole or in part, the Loan, the Loan Documents, the Obligations, the Liens, or the negotiation, |
| 28 | | |

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

formulation, preparation, effectuation, performance or enforcement of any of the Loan Documents or any other acts or omissions by any or all of the Indemnitees in connection therewith, except such as may be caused by the gross negligence or willful misconduct of the applicable Indemnitee. The foregoing indemnity shall be effective whether or not such any such investigation, litigation, or other proceeding to which the indemnity applies is brought by Debtor, any of its respective managers, security holders, creditors, or any other Person and whether or not an Indemnitee is otherwise a party thereto and whether or not the transactions contemplated hereby are consummated.

**506(c) Waiver**
DIP Loan Agreement, § 8(n)(xvii), (xviii) at 29, § 12(a) at 32
Financing Order, ¶¶

*FRBP 4001(c)(1)(B)(x)*

Lender shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral, and all proceeds thereof shall be received and used in accordance with the Interim Financing Order. Lender shall (i) be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equity of the case" exception under Section 552(b) shall not apply to Lender with respect to proceeds, products, offspring, or profits of any of the Collateral, and (ii) not be subject to any surcharge claim under Sections 506(c) or 105(a) of the Bankruptcy Code or otherwise, for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by Lender upon the Collateral or and no costs or expenses of administration that have been or may be incurred in the Chapter 11 Case at any time shall be charged against Lender or any of its claims or Liens, and Debtor hereby irrevocably waive any such claims.

**Lien on Avoidance Actions**

*FRBP 4001(c)(1)(B)(xi)*

None.

16.    As discussed more fully below, the provisions of the DIP Loan Agreement are all justified under the circumstances of this Chapter 11 Case. Prepetition, the Debtor was unable to obtain financing on more favorable terms from sources other than the Lender. The Lender has agreed to lend $2.5 million, but would not do so without the protections and priorities sought in this Motion. Without such financing, the Debtor's ability to complete the entitlement process and ultimately reorganize will be severely jeopardized. The Debtor thus respectfully submits that the facts and circumstances of this Chapter 11 Case demonstrates that the above-described provisions, which are set forth in greater detail below, are necessary and appropriate and should be authorized and approved by this Court.

15

Active\121589980.v2-4/21/21

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

### III.

### JURISDICTION

17.    This Court has jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

18.    Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

19.    The statutory bases for the relief requested herein are §§ 105, 361, 362, 363(c), 363(e), 364(c), 364(d)(1) and 364(e), Bankruptcy Rule 4001(c) and LBR 4001-2.

### IV.

### RELIEF REQUESTED

20.    By this Motion, Orcutt seeks authorization to obtain the Loan from the Lender under the terms of the DIP Loan Agreement.  The ability of the Orcutt to administer and preserve the value of its assets, and to propose a plan of reorganization that will maximize the return for all stakeholders requires the availability of the Loan funds under the terms of the DIP Loan Agreement. In the absence of the availability of such funds, the ability of the Debtor to propose a plan of reorganization would be jeopardized, and irreparable harm to the Debtor and its bankruptcy estate and creditors would occur.   Accordingly, timely approval of the proposed Loan is critical to preserving the going concern value of the Debtor's estate.

### V.

### LEGAL ARGUMENT

A.    **The Debtor Has Satisfied the Legal Requirements for Approval of the Loan Under Sections 364(c) & (d) of the Bankruptcy Code.**

21.    Orcutt proposes to obtain financing under the Loan by providing the Lender liens on their unencumbered assets other than Avoidance Actions, and senior "priming" liens on any encumbered assets, pursuant to § 364(d).  In addition, the Debtor proposes to provide the Lender with superpriority administrative claims pursuant to § 364(c) that can be satisfied from all assets other than Avoidance Actions.

Active\121589980.v2-4/21/21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

22.    Section 364 gives bankruptcy courts the power to authorize post-petition financing for a chapter 11 debtors in possession. *See In re Defender Drug Stores. Inc.*, 126 B.R. 76, 81 (Bankr. D. Ariz. 1991), *aff'd.*, 145 B.R. 312 (B.A.P. 9th Cir. 1992).  "Having recognized the natural reluctance of lenders to extend credit to a company in bankruptcy, Congress designed [section] 364 to provide 'incentives to the creditor to extend post-petition credit.'"  *Id.* at 81 (quoting Unsecured Creditors' Comm. v. First Nat'l Bank & Trust Co. of Escanaba (In re Ellingsen MacLean Oil Co.), 834 F.2d 59, 603 (6th Cir. 1987). *cert. denied*, 488 U.S. 817 (1988)).  The incentives enumerated in § 364 are not intended to be an exhaustive list of the inducements that a court may grant.  *Id.*  In fact, it is not uncommon for a court to approve a lending arrangement containing terms that far exceed those authorized by § 364.  *Id.*

23.    The statutory requirement for obtaining postpetition credit with a superpriority administrative claim and/or secured by liens on unencumbered property is a finding, made after notice and a hearing, that the debtor-in-possession is "unable to obtain unsecured credit allowable under section 503(b)(1) of [the Bankruptcy Code] as an administrative expense."  11 U.S.C. § 364(c).

24.    Generally, courts apply a three-part test to determine whether a Debtors in possession may obtain credit under § 364(c) of the Bankruptcy Code. Under such test, the Debtors may incur postpetition financing under the DIP Loan Agreement, pursuant to § 364(c) if it demonstrates that (a) it cannot obtain credit unencumbered or without superpriority status, (b) the Loan is necessary to preserve the assets of their estates, and (c) the terms of the DIP Loan are fair, reasonable and adequate given the circumstances of the Debtors, as Borrower, and the proposed lenders.  *See In re Crouse Group. Inc.*, 71 B.R. 544, 549-50 (Bankr. E.D. Pa. 1987); *In re Aqua Assocs.*, 123 B.R. 192, 195-96 (Bankr. E.D. Pa. 1991); *In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990); *see also In re St. Mary Hospital*, 86 B.R. 393, 401-02 (Bankr. E.D. Pa. 1988).

25.    In addition, the statutory requirement for obtaining postpetition credit secured by a senior "priming lien" on encumbered property is a finding, made after notice and a hearing, that the debtor-in-possession is "unable to obtain such credit otherwise" and that "there is adequate

17

protection of the interest of the holder of the lien on the property of the estate on which such senior . . . lien is proposed to be granted." 11 U.S.C. § 364(d)(1); *see also Aqua Assocs.*, 123 B.R. at 196; *In re Republic Airways Holdings Inc.*, No. 16-10429(SHL), 2016 WL 2616717, at *10-11 (Bankr. S.D.N.Y. May 4, 2016). Additionally, consent to priming by the prepetition secured creditors obviates the need to show adequate protection. *See Anchor Sav. Bank FSB v. Sky Valley. Inc.*, 99 B.R. 117, 122 (N.D. Ga. 1989) ("[B]y tacitly consenting to the superpriority lien, those [undersecured] creditors relieved the Debtors of having to demonstrate that they were adequately protected."). Accordingly, the Debtors may incur "priming" liens under the DIP Loan Agreement if it is unable to obtain unsecured or junior secured credit and either (i) the prepetition secured creditors have consented or (ii) their interests in the collateral are adequately protected.

26.     Against this statutory backdrop, courts will evaluate the facts and circumstances of a debtor's case and accord significant weight to the necessity for obtaining the financing. *See, e.g., In re Ames Dep't Stores. Inc.*, 115 B.R. 34, 40-41 (Bankr. S.D.N.Y. 1990). Debtors in possession are generally permitted to exercise their business judgment consistent with their fiduciary duties when evaluating the necessity of proposed protections for a party extending credit under § 364 of the Bankruptcy Code. *Id.* at 38. Consistent with this authority, and for the reasons discussed below, the Debtor respectfully submits that the Court should approve the Debtor's decision to enter into the Loan.

**1.     No Comparable Alternative To The Loan Is Currently Available.**

27.     To show that the credit required is not obtainable on an unsecured basis, the Debtor need only demonstrate "by a good faith effort that credit was not available" without the protections afforded to potential lenders by § 364(c) or (d) of the Bankruptcy Code. *Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986); *see also Anchor Sav. Bank*, 99 B.R. at 120 n.4 (noting that the Debtors satisfied the requirement of § 364(d) by "approach[ing] all lenders reasonably likely to be willing to make a junior or unsecured loan"); *Ames*, 115 B.R. at 37-40 (Debtors in possession must show that it has made a reasonable effort to seek other sources of financing under §§ 364(a) and (b) of the Bankruptcy Code). Thus, "[the] statute imposes no duty to seek credit from every possible lender before concluding that such credit

18

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

is unavailable." *Snowshoe*, 789 F.2d at 1088; *see also In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1998) (finding that "it would be unrealistic and unnecessary to require [the Debtors] to conduct such an exhaustive search for financing" where the Debtors "suffers some financial stress and has little or no unencumbered property"), *aff'd sub nom.*, *Anchor Sav. Bank*, 99 B.R. at 117.

28.    As noted above, during the process of negotiating the terms of the Loan, the Debtor attempted to identify other sources of postpetition financing to determine whether it could obtain debtor in possession financing on better terms. *See* Greenberg Decl., at ¶¶ 35, 40.  However, given their current financial condition, financing arrangements and capital structure, the Debtor has been unable to obtain financing on more favorable terms than those provided in the DIP Loan Agreement. *See id.*

29.    In sum, the Debtor has made a concerted, good-faith effort to obtain credit on the most favorable terms that are available.  As explained above, the required financing was not available on an unsecured or junior lien basis, and the terms of the Loan were, on the whole, the most favorable terms available to the Debtors.[6]  *See id.*, at ¶ 35, 40.  The Debtor's efforts are sufficient given the size and uniqueness of the loan and the time sensitivity of the Chapter 11 Case. *See, e.g., In re Reading Tube Indus.*, 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987) ("Given the 'time is of the essence' nature of this type of financing, we would not require this or any debtor to contact a seemingly infinite number of possible lenders."); *Sky Valley, Inc.*, 100 B.R. at 113 (authorizing DIP loan priming lien where debtor contacted three other lenders; observing that "it would be unrealistic and unnecessary to require Debtor to conduct such an exhaustive search for financing"); *Ames Dep't Stores*, 115 B.R. at 40 (authorizing DIP loan superpriority claim where debtor contacted four other lenders); *see also Bray*, 789 F.2d 1088 (holding that § 364 "imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable").

30.    The Debtor respectfully submits that, given the extensive (and unsuccessful) efforts made to seek alternatives, they have demonstrated that postpetition financing is not available on a

---

[6] In addition, several other interested lenders discussed structures that were also less favorable than the DIP Loan Offer, but never made any formal offers.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

19

1    more favorable basis.  *See* Greenberg Decl., at ¶¶ 34-40.

2        **2.        The Loan Is Necessary To Protect The Debtor's Estate.**

3        31.        As explained above, denial of the Debtor's requested relief will cause irreparable

4    harm to the Debtor and its estate.  The Loan is necessary to permit the orderly continuation of the

5    Debtor's efforts to obtain entitlements that would substantially increase the value of the Property,

6    minimize the disruption of the business operations, and preserve and maximize the value of the

7    Debtor's estate.  *See* Greenberg Decl., at ¶ 40.  Absent access to the Loan, Orcutt would have no

8    ability to meet its ongoing obligations.  *See id.*  If Orcutt is unable to pay its ongoing obligations, it

9    will not be able to operate and may have to shut down immediately.  *See id.*  In contrast, the

10   Debtor's access to the Loan will ensure that the value of Orcutt's Property is preserved along with

11   the possibility for increased, post-entitlement value, which the Debtor believes is greater than the

12   value which would be realized from liquidation of the Property if Orcutt was forced to cease its

13   entitlement efforts immediately.  *See id.* at ¶¶ 28, 40.

14       **2.        The Terms Of The Loan Are Reasonable Under The Circumstances.**

15       32.        The terms and conditions of the Loan have been the subject of extensive negotiations

16   conducted in good faith and at arm's length, and are fair and reasonable under the circumstances.

17   *See* Greenberg Decl., at ¶ 36.

18       33.        Indeed, the terms of the DIP Loan Agreement are similar to those often included in

19   complex financing arrangements and reflect the give and take that result from complex financing

20   negotiations.  *See id.*, at ¶ 37.

21       34.        Courts recognize that a debtor often must make significant concessions in exchange

22   for financing.  *See, e.g., In re Ellingsen MacLean Oil Co.*, 65 B.R. 358, 365 (Bankr. W.D. Mich.

23   1986) (chapter 11 postpetition financing is "fraught with dangers for creditors"), aff'd, 834 F.2d 599

24   (6th Cir. 1987).  Accordingly, courts acknowledge that a debtor may need to "enter into a hard

25   bargain with a creditor in order to acquire the needed funds to complete reorganization."  *Id.* at 365.

26       35.        As part of that bargain, lenders often agree to subordinate or "carve-out" from their

27   collateral funds to pay professionals.  *See Harvis Trien & Beck, P.C. v. Federal Home Mortgage*

28   *Corp. (In re Blackwood Assocs., L.P.)*, 187 B.R. 856, 860 (Bankr. E.D.N.Y. 1995) (court advised

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

20

1    that if professionals really want to be paid they had best insist upon a "real carve out"); *Ames Dep't*

2    *Stores*, 115 B.R. at 40 (noting practice of district to insist on carve-out for fees in order to preserve

3    adversary system).

4        36.    As noted above, the terms of the DIP Loan Agreement are favorable under the

5    circumstances. *See* Greenberg Decl., at ¶ 37.  For instance, the interest rate of fifteen percent (15%)

6    is reflective of the competitive rates available in the market for financing to a distressed borrower

7    secured by a lien on distressed, undeveloped property.  *See id.*  Further, the DIP Loan Agreement

8    allows the Debtor to accrue 3% of such interest (payable upon maturity) for an effective "pay rate"

9    of 12%.   The effective pay rate is reasonable, in part, when viewed against the non-default interest

10   rates under the Romspen mortgage, which are between 10.75% and 11%. *See id.*  Additionally, the

11   negotiated interest rate for the unsuccessful refinance proposal for the Romspen mortgage was 12%

12   per annum.  *See id.*  Accordingly, the interest rate is reasonable particularly in light of the Accrual

13   Rate set forth in the DIP Loan Agreement, which allows the Debtor to make payments at a 12% per

14   annum rate until Maturity.

15       37.    Furthermore, the DIP Loan Agreement provides for a Carve-Out in the amount of

16   $200,000.  The Carve Out provides for payment of Estate Professional Fees—including Debtor's

17   counsel and counsel to any Committee—and payment of estimated United States Trustee fees to be

18   incurred during the course of the Chapter 11 Case.   The Events of Default and conditions to

19   borrowing are customary in postpetition financings, as is the Lender's ability to exercise remedies

20   upon the occurrence of an Event of Default.  The Lender does not unduly seek to control or restrict

21   the Debtor's ability to prosecute the Chapter 11 Case.

22       38.    Moreover, the Loan does not impose any milestones or deadlines in connection with

23   any Plan.  Instead, the Lender simply requested reasonable protections to secure repayment of the

24   funds it is advancing in the form of the Loan.

25       39.    Therefore, the Court should approve the Loan based on its fair and reasonable terms

26   and find that the Lender acted with the requisite good faith to be accorded the benefits of section

27   364(e) of the Bankruptcy Code.[7]

28

---

[7] Section 364(e) of the Bankruptcy Code provides that:

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Active\121589980.v2-4/21/21

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

**3.**     **The Existing Secured Creditors Either Consent And/Or Are Adequately Protected.**

40.     When a debtor seeks post-petition financing with a priming lien under § 364(d), in addition to the three factors discussed above, the debtor must also either "provide adequate protection for the interest of the holder of the existing lien or obtain such lien holder's consent." 3 COLLIER ON BANKRUPTCY ¶ 364.05 (16th ed., 2019 rev.). "When there is substantial equity, the equity may protect the holder of the existing lien as well as provide security for the new lender." *Id.*

41.     As discussed below, substantial equity cushions protect the interests of the Prepetition Secured Creditors:  Romspen Mortgage Limited Partnership and Apollo Development LLC.   Nonetheless, the Debtors propose adequate protection payments to further protect the interests of the Prepetition Secured Creditors.

**a.     Romspen Mortgage Limited Partnership**

42.     As detailed above, Romspen has a first priority lien on the Property.  Romspen's liens can be primed because Romspen's claims are more than adequately protected.  As discussed above, Romspen asserts an aggregate secured claim in the approximate amount of aggregate approximately $8,235,077.11, the Property (even in its un-entitled state) was appraised at approximately $11 million in November 2019. *See* Greenberg Decl., at ¶ 41.  Further, the as-entitled value of the Property is estimated at $16.6 million. *See id.*  The Debtor further estimates that the as-is and as-entitled values are substantially higher as of the Petition Date based on recent comparable development projects and is in the process of seeking a supplemental appraisal reflective of the current valuations. *See id.*  Nonetheless, the current as-is property value exceeds the alleged secured claim notwithstanding priming.

---

The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e).

Active\121589980.v2-4/21/21

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

43.    Additionally, the Budget in support of the Loan allocates $225,000 for monthly adequate protection payments to Romspen over the 18 month term of the Loan, e.g., 18 monthly payments of $12,500.  *See id.*, at ¶ 41, Ex. B (Budget).  The proposed adequate protection is calculated as 2.5% simple interest on the outstanding principal balance of the Romspen loan in the approximate amount of $5.92 million.  *See id.*, at ¶ 41.  Accordingly, Romspen is adequately protected based on both the equity cushion and the proposed monthly adequate protection payments.

### b.    Apollo Development LLC

44.    As discussed above, the Debtor's majority member, Apollo, holds a second priority secured lien on the Property.  As discussed above, Apollo's secured claim is in the approximate amount of $2,164,850.  The Budget in support of the Loan allocates $90,000 for monthly adequate protection payments to Apollo over the 18 month term of the Loan, e.g., 18 monthly payments of $5,000.  *See id.*, at ¶ 42, Ex. B (Budget).  Apollo consents to the foregoing proposed adequate protection.  *See id.*  Accordingly, Apollo is adequately protected based on the proposed monthly adequate protection payments and its consent to the foregoing treatment.

### c.    Conclusion

45.    In short, the Debtor has demonstrated ample grounds to authorize the requested Loan priming liens under § 364(d).  The Prepetition Secured Creditors have either consented to the priming liens and/or are more than adequately protected by sizeable equity cushions and going-forward adequate protection payments.

### 4.    Debtor's Decision to Enter into the DIP Loan Agreement Is Supported by Sound Business Judgment.

46.    Bankruptcy courts consistently defer to a debtor's business judgment on most business decisions, including the decision to borrow money, unless such decision is arbitrary and capricious.  *In re Republic Airways*, 2016 WL 2616717, at *11 ("In determining whether to authorize post-petition financing, bankruptcy courts will generally defer to the debtor's business judgment.").  In fact, "[m]ore exacting scrutiny [of the debtor's business decisions] would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's

23

provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

47.     In particular, a bankruptcy court should defer to a debtor's reasonable business judgment regarding the need for funds, so long as the proposed financing agreement does not contain terms that either leverage the bankruptcy process or that benefit a third party rather than the bankruptcy estate. *See, e.g., In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that an interim loan, receivables facility and asset-based facility were approved because they "reflect[ed] sound and prudent business judgment . . . , [were] reasonable under the circumstances and in the best interest of [the debtor] and its creditors").

48.     As explained by the bankruptcy court in *Ames Dep't Stores*:

> [A] court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.

115 B.R. at 40.

49.     Here, Debtor's decision to enter into the Loan represents a reasonable exercise of business judgment.  Without the Loan, Debtor would not be able to fund operations or proceed with a plan of reorganization.  Instead, Debtor would be faced with the potential for administrative insolvency followed by a liquidation.  Given the choice between these two alternatives, Debtor prudently negotiated the Loan with the Lender to ensure that the Debtor will have the time needed to bring the Chapter 11 Case to a successful conclusion.  In sum, the Court should approve the Debtor's decision to enter into the Loan as an exercise of sound business judgment.

**B.      The Court Should Approve the Proposed Break-Up Fee.**

50.     The Debtor seeks authority to pay the Break-Up Fee to the Lender in the event that the Debtor does not obtain financing from the Lender to, among other things, compensate the Lender for its substantial efforts to diligence the proposed transaction in the short period available before the Petition Date.  Termination or break-up fees are permissible where they provide a

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

24

1  postpetition benefit to the bankruptcy estate. *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In*

2  *re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 535 (3d Cir. 1999) (holding that "the allowability of

3  break-up fees . . . depends upon the requesting party's ability to show that the fees were actually

4  necessary to preserve the value of the estate"); *In re Reliant Energy Channelview LP*, 594 F.3d 200

5  (3d Cir. 2010) (citing and affirming *O'Brien* standard for approval of breakup fees).

6      51.    In particular, such a protection encourages a potential postpetition lender to invest

7  the requisite time, money, and effort to conduct due diligence and loan negotiations with a debtor

8  despite the inherent risks and uncertainties of the chapter 11 process. *See, e.g., Integrated*

9  *Resources*, 147 B.R. at 660 (noting that fees may be legitimately necessary to convince a "white

10  knight" to offer an initial bid, for the expenses such bidder incurs and the risks such bidder faces by

11  having its offer held open, subject to higher and better offers); *In re Hupp Indus.*, 140 B.R. 191, 194

12  (Bankr. N.D. Ohio 1997); *In re Marrose Corp.*, 1992 WL 33848, at *5 (Bankr. S.D.N.Y. 1992); *In*

13  *re 995 Fifth Ave. Assocs.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (finding that bidding incentives

14  may be "legitimately necessary to convince a white knight to enter the bidding by providing some

15  form of compensation for the risks it is undertaking") (citations omitted).

16      52.    Break-up fees in the same general range as the proposed Break-Up Fee—here 2% of

17  the total principal amount of the Loan—are routinely approved. *See, e.g., In re CXM, Inc.*, 307 B.R.

18  94, 103–04 (Bankr. N.D. Ill. 2004) (court approved break-up fee in amount equal to the actual

19  expenses that the stalking horse incurred in connection with its bid to buy the Sale Assets, subject to

20  a maximum cap of $200,000, which equaled 3% of the cash purchase price); *In re Women First*

21  *Healthcare, Inc.*, 332 B.R. 115, 118 (Bankr. D. Del. 2005) (court approved break-up fee that

22  equaled 4.7% percent of the purchase price; *In re Dan River, Inc.*, No. 04-10990 (Banker. N.D. Ga.

23  Dec. 17, 2004) (court approved break-up fee equal to 5.3% of the cash purchase price); *In re Lake*

24  *Burton Dev.*, LLC, 2010 WL 5563622, *43 (Bankr. N.D. Ga. Mar. 18, 2010) (court approved break-

25  up fee equal to 4.75% of cash purchase price); *In re Case Engineered Lumber, Inc.*, No. 09–22499

26  (Bankr. N.D.Ga. Sept. 1, 2009)(J. Brizendine) (approving break-up fee equal to 3.5% of the cash

27  purchase price); *In re Tama Beef Packing Inc.*, 321 B.R. 469, 498 (8th Cir. BAP 2005) (noting that

28  the bankruptcy court correctly concluded that break-up fees are "usually limited to one to four

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

25

1  perfect of the purchase price"). Courts in this District also approved break-up fees within the range

2  of the proposed Break-Up Fee. *See In re Verity Health System of California, Inc.*, No. 18-20151

3  (Bankr. C.D. Cal. Oct. 30, 2018) (approving break-up fee equal to 4% of the cash purchase price);

4  *In re T Asset Acquisition Company, LLC*, No. 09-31853 (Bankr. C.D. Cal. Jan. 28, 2010) (approving

5  break-up fee equal to 3% of the cash purchase price).

6      53.    The Debtor submits the proposed Break-Up Fee to the Lender is in the best interest

7  of the Debtor's estate. The proposed break-up fee of 2% of the principal amount of the Loan is well

8  within, and below, the percentage parameters that have been approved by many other courts. Thus,

9  the Debtors the proposed Break-Up Fee will fairly and reasonably compensate the Lender for taking

10  actions that will benefit the Debtor's estates, including undertaking diligence on the short timeline

11  necessitated by this Chapter 11 Case and professional fees incurred in negotiating the terms of the

12  DIP Loan Agreement on an expedited timeline. Notwithstanding the substantial time and expense

13  the Lender incurred in negotiating the DIP Loan Agreement, the Break-Up Fee still offers the

14  Debtor the opportunity to pursue alternative (but, following the Debtor's marketing efforts, very

15  unlikely) funding sources on the best possible terms available to the estate, should any appear prior

16  to approval of the DIP Loan Agreement. In the event the Court approves the DIP Loan Agreement

17  on a final basis, the Break-Up Fee will be applied toward payment of the Interest Reserve upon the

18  funding of the Second Advance. Accordingly, the proposed Break-Up Fee should be approved as

19  reasonable under the circumstances and in the best interests of the Debtor and its estate.

20  **C.    The Court Should Modify the Automatic Stay and Waive Any Applicable Stay To The**

21      **Effectiveness Of Order.**

22      54.    Debtor respectfully requests the Court to modify the automatic stay imposed by

23  § 362 to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan

24  Agreement and Financing Orders. Debtor also requests the Court to waive any applicable stay

25  (including under Bankruptcy Rules 4001 and 6004) with respect to the effectiveness and

26  enforceability of the Order and provide for the immediate effectiveness of the Order.

27

28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Active\121589980.v2-4/21/21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

# VI.

## CONCLUSION

WHEREFORE, based upon the foregoing, the Debtor respectfully requests that the Court: (i) grant the Motion in its entirety on an interim basis; (ii) enter the Interim Financing Order, in substantially the form attached hereto as **Exhibit "A,"** (iii) authorize the Debtor to borrow under the terms of the DIP Loan Agreement, including the grant of priming liens and superpriority administrative claims as provided therein; (iv) schedule a Final Hearing for approval of the Motion on a final basis not later than 20 days following entry of the Interim Financing Order (as set forth in the DIP Loan Documents); and (v) grant Debtor such other relief as the Court deems necessary and appropriate.

DATED this 21st day of April 2021.

**FOX ROTHSCHILD LLP**

By: _____/s/Brett Axelrod_____
     BRETT A. AXELROD, ESQ. (Bar No. 168657)
     NICHOLAS A. KOFFROTH, ESQ. (Bar No. 287854)
     Constellation Place
     10250 Constellation Blvd., Suite 900
     Los Angeles, California 90067
     *Proposed Counsel for Debtor*

Active\121589980.v2-4/21/21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "A"**

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

BRETT A. AXELROD, ESQ. (Bar No. 168657)
NICHOLAS A. KOFFROTH, ESQ. (Bar No. 287854)
**FOX ROTHSCHILD LLP**
Constellation Place
10250 Constellation Blvd., Suite 900
Los Angeles, California 90067
Telephone: (310) 598-4150
Facsimile: (310) 556-9828
Email: baxelrod@foxrothschild.com
        nkoffroth@foxrothschild.com
*Proposed Counsel for Debtors*

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**NORTHERN DIVISION**

| | |
|---|---|
| In re | Case No. 9:21-bk-10412-MB |
| | Chapter 11 |
| ORCUTT RANCHO, LLC, | **INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 362, 363, 364, 503, AND 507 AND FED R. BANK. P. 2002, 4001, 6004, AND 9014: (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING; (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS; (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED CREDITORS; (IV) MODIFYING THE AUTOMATIC STAY; AND (V) GRANTING RELATED RELIEF** |
| Debtor. | |

Hearing Date:   April 26, 2021
Hearing Time:   10:30 a.m. (Pacific Time)
Location:         1415 State Street
                      Santa Barbara, CA 93101

*Sidebar (rotated text):* FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Active\121834933.v1-4/21/21

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

The Court, having considered the *Emergency Motion for Interim and Final Orders: (I) Authorizing Debtor to Obtain Postpetition Financing; (II) Granting Liens and Superpriority Claims; (III) Granting Adequate Protection to Prepetition Secured Creditors; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* filed on April 21, 2021 (the "Motion")[1] by Orcutt Rancho, LLC ("Orcutt" or "Debtor"), as debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), pursuant to Sections 105, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e), 503, and 507 of Title 11 of the United States Code, §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the local rules for the United States Bankruptcy Court for the Central District of California (the "Local Rules"), seeking entry of this interim order (the "Financing Order"):

    i.    authorizing Debtor to obtain post-petition senior secured, superpriority financing in the principal amount $2,500,000 (the "DIP Loan Amount"), including an initial advance of the Loan proceeds in an amount equal to $457,068.00 (the "Initial Advance"), on the terms and conditions set forth in that certain *Debtor-In-Possession Loan Agreement* dated as of April 19, 2021 (the "DIP Loan Agreement"), by and among Debtor, as borrowers, and Santa Maria DIP LLC, as lender ("Lender");

    ii.    authorizing and ratifying, for purposes of the Initial Advance, Debtor's execution and delivery of the (i) the DIP Loan Agreement, (ii) the Note, (iii) the Environmental Indemnity Agreement, and (iv) all other security agreements, pledge agreements, patent, trademark and copyright security agreements, control agreements, financing statements and any other instruments and documents requested by Lender creating or purporting to create a Lien on the Collateral, including but not limited to the Financing Orders, and/or reasonably related to the foregoing, and all amendments, restatements, modifications or supplements thereof or thereto (collectively, the "Loan Documents"); as well as all loans, advances, liabilities, obligations, covenants, duties, and debts owing by Debtor to Lender arising under or pursuant to the DIP Loan Agreement or any of the other Loan Documents, whether or not evidenced by any note, other instrument or document, whether arising from an extension of credit, acceptance, loan, guaranty, indemnification, or otherwise, whether direct or indirect, absolute or contingent, due or to become due, primary or secondary, as principal or guarantor, and including all principal, interest, charges, expenses, fees, attorneys' fees, filing fees, and any other sums chargeable hereunder or under any of the other Loan Documents including, without limitation, all debts,

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the DIP Loan Agreement.

2

liabilities, and obligations of Debtor now or hereafter arising from or in connection with the Loan (collectively, the "Obligations"), and to perform such other and further acts as may be necessary, desirable, or appropriate in connection therewith;

iii.    granting to Lender a continuing Lien on and security interest in all of Debtor's right, title and interest in and to the Collateral pursuant to Section 364(c)(1) of the Bankruptcy Code in respect of the Obligations, and valid, enforceable, non-avoidable, and automatically perfected first priority liens on and security interests in all Collateral (as defined below), pursuant to Section 364(c)(2) of the Bankruptcy Code, to secure the Obligations, in each case as and to the extent set forth in the Loan Documents and this Interim Financing Order, and if and to the extent that any of the Collateral is encumbered, granting Lender priming liens on the Collateral pursuant to Section 364(d) of the Bankruptcy Code to secure the Obligations;

iv.    authorizing Debtor to use the proceeds of the Initial Advance solely in accordance with this Interim Financing Order and the Loan Documents;

v.    authorizing Debtor to pay all fees, costs, and expenses due pursuant to the DIP Loan Agreement and the other Loan Documents;

vi.    vacating or modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Loan Documents and this Interim Financing Order; and

vii.    waiving any applicable stay (including under Bankruptcy Rules 4001 and 6004) with respect to the effectiveness and enforceability of this Order and providing for the immediate effectiveness of this Interim Financing Order.

The interim hearing on the Motion having been held by the Court on April 26, 2021, at 10:30 a.m. (Pacific Time) (the "Interim Hearing"); and upon the record made by the Debtor at the Interim Hearing, including the Motion, the terms of the DIP Loan Agreement, the declaration of Gary Greenberg filed in support of the Motion, and the filings and pleadings in the Chapter 11 Case; and due and proper notice of the Motion, the relief requested therein, and the Interim Hearing having been given in accordance with the Local Rules and Bankruptcy Rules 4001(c)(2) and (c)(3); and it appearing that approval of the relief requested in the Motion is fair and reasonable and in the best interest of Debtor, its creditors, and its estate (including all parties-in-interest), is essential for the continued operation of Debtor's business, and necessary to avoid immediate and irreparable harm to Debtor and its estate; and all objections, if any, to entry of this Order having been withdrawn, resolved, or overruled by the Court; and after due deliberation and consideration, and

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

3

Active\121834933.v1-4/21/21

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1   for good and sufficient cause appearing therefor,

2       **THE COURT HEREBY FINDS**:[2]

3       Petition Date.  On April 20, 2021 (the "Petition Date"), the Debtor  filed a voluntary petition

4   for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the

5   Central District of California, thereby commencing this Chapter 11 Case.

6       Debtor-in-Possession.  The Debtor is continuing to operate its business and manage its

7   properties as Debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No

8   trustee or examiner has been appointed in any of the Chapter 11 Case.

9       Jurisdiction and Venue.  This Court has jurisdiction to hear the Motion pursuant to 28

10  U.S.C. § 1334.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. §

11  157(b)(2)(D).  Venue for the Chapter 11 Case and the proceedings on the Motion is proper in this

12  District pursuant to 28 U.S.C. §§ 1408 and 1409.

13      Notice.  Notice of the Interim Hearing and the relief requested in the Motion has been

14  provided by Debtor as set forth in the Motion.  Under the circumstances, such notice of the Interim

15  Hearing and the relief requested in the Motion constitutes due, sufficient, and appropriate notice,

16  and complies with Section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c), and

17  9014, and the Local Bankruptcy Rules.

18      Need for Postpetition Financing.  An immediate need exists for Debtor to obtain funds in

19  order to continue operations and to administer and preserve the value of its bankruptcy estate.  The

20  ability of Debtor to finance its operations, to preserve and maintain the value of its assets, and

21  maximize the return for all creditors requires the availability of working capital under the terms of

22  the debtor-in-possession financing transactions described in the DIP Loan Agreement.  In the

23  absence of the availability of such funds in accordance with the terms hereof and the DIP Loan

24

25

26  [2] Pursuant to FED. R. BANKR. P. 7052: To the extent any of the following findings of fact constitute
conclusions of law, they are adopted as such; and, to the extent any of the following conclusions of

27  law constitute findings of fact, they are adopted as such.  The Court's findings shall also include any
oral findings of fact and conclusions of law made by the Court during or at the conclusion of the

28  Interim Hearing.

4

1  Agreement, the continued operation of Debtor's business would not be possible, and immediate and

2  irreparable harm to Debtor and its bankruptcy estate and creditors would occur.

3      No Credit Available on More Favorable Terms.  Given its current financial condition,

4  financing arrangements, and capital structure, Debtor is unable to obtain financing from sources

5  other than Lender on terms more favorable than are provided under the DIP Loan Agreement and

6  the Loan Documents.  Debtor has been unable to obtain (a) adequate unsecured credit allowable

7  under Section 503(b)(1) of the Bankruptcy Code as an administrative expense; (b) credit with

8  priority over any or all administrative expenses of the kind specified in Sections 503(b) or 507(b) of

9  the Bankruptcy Code; (c) credit secured solely by a lien on or a security interest in property of

10  Debtor's bankruptcy estate that is not otherwise subject to a lien or security interest; or (d) credit

11  secured by a junior lien or security interest in property of  Debtor's bankruptcy estate which is

12  subject to a lien or security interest.

13      Extension of Financing.  Lender has indicated a willingness to provide financing to Debtor

14  in accordance with the DIP Loan Agreement and other Loan Documents, subject to: (i) the entry of

15  this Interim Financing Order (and, with respect to the Second Advance, a Final Financing Order),

16  including, among other things, approval of the benefits and protections for Lender contained herein;

17  (ii) approval and ratification of Debtor's entry into the DIP Loan Agreement and other Loan

18  Documents; and (iii) findings by this Court that such financing is essential to Debtor's estate and its

19  continued operations, that Lender has acted in good faith and is a good faith financier, and that

20  Lender's claims, superpriority claims, security interests, liens, and other protections granted

21  pursuant to and in connection with this Interim Financing Order and the DIP Loan Agreement

22  (specifically including the Superpriority Claims and Liens (each as defined below)), will not be

23  affected by any subsequent reversal, modification, vacatur, stay, or amendment of, as the case may

24  be, this Interim Financing Order or any other order, as provided in Section 364(e) of the Bankruptcy

25  Code.

26      Business Judgment and Good Faith.  The terms and conditions of the DIP Loan, as set forth

27  in the DIP Loan Agreement and other Loan Documents, and this Financing Order and the fees paid

28  and to be paid thereunder: (i) are fair, reasonable, and the best available under the circumstances;

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

5

(ii) reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties; and (iii) is supported by reasonably equivalent value and consideration. The Loan was negotiated in good faith and at arm's length between Debtor Parties and Lender. The Initial Advance to be extended under the DIP Loan Agreement and this Interim Financing Order will be extended by Lender in good faith, and for valid business purposes and uses by Debtor; and, as a consequence, Lender (and its successors and assigns) is entitled to the protection and benefits afforded by Section 364(e) of the Bankruptcy Code, whether or not this Interim Financing Order or any provision thereof is vacated, reversed, stayed, or modified, on appeal or otherwise.

Relief Essential; Best Interests. The relief requested in the Motion and granted by this Interim Financing Order is necessary, essential, and appropriate for the continued operation of the Debtor's business and management and preservation of its bankruptcy estate and to avoid immediate and irreparable harm as contemplated by Bankruptcy Rule 4001. It is in the best interests of Debtor's estate that the Debtor be allowed to enter into the DIP Loan Agreement and the other Loan Documents, incur the Obligations, and grant to Lender the liens and claims contemplated in the DIP Loan Agreement, in this Interim Financing Order, and under the other Loan Documents. The financing authorized hereunder on an interim basis is vital to avoid immediate irreparable harm to Debtor's business, properties and estate and to allow the orderly continuation of Debtor's business.

Priming. To the extent that Romspen Mortgage Limited Partnership, an Ontario limited partnership ("Romspen") or Apollo Development, LLC, a Colorado limited liability company ("Apollo" and, together with Romspen, the "Prepetition Secured Creditors"), has a Lien on or security interest in any of the Collateral (respectively, the "Potential Romspen Lien" and the "Potential Apollo Lien" and, collectively, the "Potential Liens"), but without so finding: (i) Apollo has consented to the Liens priming the Potential Apollo Lien under Section 364(d) of the Bankruptcy Code; (ii) as established by the evidence submitted in support of the Motion, to the extent that Romspen has a Lien on or a security interest in any of the Collateral, but without so finding, Romspen's alleged interests in the Collateral are adequately protected by the value of the property securing its respective Liens and security interests; and (iii) as established by the evidence

Active\121834933.v1-4/21/21

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1  submitted in support of the Motion, to the extent that Romspen and Apollo have a Lien on or a

2  security interest in any of the Collateral, but without so finding, Romspen's and Apollo's alleged

3  interests in the Collateral are adequately protected by the proposed adequate protection payments

4  set forth in the Motion.   As such, based on the Motion and the unrefuted evidence submitted

5  therewith establishing that the Romspen and Apollo are adequately protected, every Lien and

6  security interest asserted by the Romspen and Apollo shall be properly primed in accordance with

7  Section 364(d) of the Bankruptcy Code.

8      **NOW THEREFORE**, upon the Motion and the record before this Court with respect to the

9  Motion, including the record made during and the Interim Hearing, the declaration of Gary

10  Greenberg filed in support of the Motion, and good and sufficient cause appearing therefor;

11      **IT IS HEREBY ORDERED** that:

12      1.    **Motion Granted**.  The Motion is granted on an interim basis in accordance with the

13  terms and conditions set forth in this Interim Financing Order.  Any objections to the Motion with

14  respect to the entry of this Interim Financing Order to the extent not withdrawn, waived, or

15  otherwise resolved, and all reservations of rights included therein, if any, are hereby overruled on

16  the merits and with prejudice.

17      2.    **Authorization of the Transaction**.

18      (a)    With respect to the Initial Advance, the DIP Loan Agreement and the other

19  Loan Documents are hereby approved on an interim basis.  Debtor is expressly and immediately

20  authorized and empowered to execute, deliver and enter into the Loan Documents, to take all acts

21  necessary to effectuate and perform in accordance with the Loan Documents and, with respect to

22  the Interim Advance, to pay all Obligations without further order of this Court.

23      (b)    In furtherance of the foregoing and without further approval of this Court,

24  Debtor is hereby authorized on an interim basis to perform all acts, to make, execute, and deliver all

25  instruments and documents (including, without limitation, the execution or recordation of any Loan

26  Documents), and to pay all fees that may be required or necessary for Debtor's performance of its

27  obligations under the DIP Loan Agreement and other Loan Documents with respect to the Interim

28  Advance, including, without limitation:

7

(i)    the execution, delivery, and performance of the Loan Documents, including, without limitation, the creation and perfection of the Liens described and provided for herein and in the Loan Documents;

(ii)    the non-refundable payment to Lender of the fees referred to in the Loan Documents on the Closing Date (which fees are hereby approved) and costs and expenses as may be due under the Loan Documents from time to time, including, without limitation, fees and expenses of the professionals retained by Lender (as and to the extent provided for in the Loan Documents) without the necessity of filing retention motions or fee applications;

(iii)    the Interest Reserve shall be funded from the Loan proceeds of the Initial Advance in the amount $23,000; and

(iv)    the performance of all other acts that may be necessary, required or advisable under or in connection with the Loan Documents with respect to the Initial Advance.

(c)    The DIP Loan Agreement and other Loan Documents shall represent, constitute, and evidence the Obligations; and the Loan Documents and Obligations shall be valid and binding obligations of Debtor, which obligations shall be enforceable against Debtor, its estate, and any successors thereof, including without limitation, any trustee appointed in any of the Chapter 11 Case or any case under Chapter 7 of the Bankruptcy Code upon conversion of any of the Chapter 11 Case (collectively, the "Successor Case") in accordance with the terms thereof and this Interim Financing Order.  All Obligations incurred, payments made, and transfers or grants of security set forth in this Interim Financing Order, the DIP Loan Agreement or the other Loan Documents by Debtor, with respect to the Interim Advance, is granted to or for the benefit of Lender for fair consideration and reasonably equivalent value, and are granted contemporaneously with the making of the Loan.  No Obligation incurred, payment made, transfer or grant of security set forth in this Financing Order, the DIP Loan Agreement, or the other Loan Documents, with respect to the Interim Advance, by Debtor shall be stayed, restrained, voided, voidable, or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, subordination, setoff, recoupment, counterclaim or any other challenge under the Bankruptcy Code or any applicable non-bankruptcy law, rule, or regulation.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

8

Active\121834933.v1-4/21/21

3.  **Interest on Loan**.  In accordance with the DIP Loan Agreement, the rate of interest to be charged for the Loan shall be fifteen percent (15%) per annum (calculated on the basis of a 360-day year and actual days elapsed), inclusive of the Accrual Rate.  The Interest Reserve shall be funded in the initial amount of $23,000 from the proceeds of the Initial Advance into the Interest Reserve Account on the Closing Date.  Upon and during the occurrence of an Event of Default, in accordance with the terms of the DIP Loan Agreement, the Obligations due under the Loan shall bear interest at twenty-four percent (24%) per annum (also calculated on the basis of a 360-day year and actual days elapsed) and shall be payable in cash on demand as set forth in the DIP Loan Agreement and other Loan Documents.

4.  **Loan Fee and Reimbursement Costs**.  In accordance with the DIP Loan Agreement, Debtor shall pay Lender a loan fee for the Loan in the amount of Seventy-Five Thousand and No/100 Dollars ($75,000.00) (the "Origination Fee"). The Origination Fee shall be paid on the Closing Date from the funding of the Loan and shall be deemed fully earned, payable and non-refundable upon receipt by Lender.  On the Closing Date, the Debtor shall reimburse Lender, payable from the funding of the Loan, all expenses Lender incurs with respect to this Loan, including without limitation, all fees, costs and expenses of Lender incurred in connection with the negotiation, preparation and administration of the Loan, this DIP Loan Agreement, the Loan Documents and any other agreements or instruments related thereto.

5.  **Exit Fee**.  In accordance with the DIP Loan Agreement, and approved on an interim basis, Debtor shall pay Lender an exit fee for the Loan in the amount of Fifty Thousand and No/100 Dollars ($50,000.00) (the "Exit Fee").  The Exit Fee shall be due and payable on the earlier of (a) the date Debtor repays the Loan in full, or (b) the Maturity Date.

6.  **Break-Up Fee**.  In accordance with the DIP Loan Agreement, the Debtor shall pay Lender a break-up fee for the Loan in the amount of Fifty Thousand and No/100 Dollars ($50,000.00) (the "Break-Up Fee").  The Break-Up Fee shall be paid on the Closing Date from the funding of the Loan and shall be deemed fully earned, payable and non-refundable upon receipt by Lender.  In the event the Loan is approved on a final basis and the Final Financing Order becomes a

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

9

final, non-appealable order, the Break-Up Fee shall be applied toward payment of the Interest Reserve upon the funding of the Second Advance.

7. **Validity of the Loan Documents**.  The Loan Documents shall constitute, and are hereby deemed on an interim basis with respect to the Initial Advance to be, the legal, valid and binding obligations of Debtor, enforceable against Debtor in accordance with the terms of the Loan Documents for all purposes during this Chapter 11 Case, in any subsequently converted Chapter 11 Case of Debtor under Chapter 7 of the Bankruptcy Code or after dismissal of any of these Chapter 11 Case.  With respect to the Initial Advance, none of the validity, perfection, priority, extent or enforceability of the Obligations or the Liens granted to Lender shall be subject to any challenge by or on behalf of any Debtor or its estate, including, without limitation, an effort to equitably subordinate or avoid the Liens.  With respect to the Initial Advance, no Obligation, payment, transfer or grant of security under the Loan Documents shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

8. **Superpriority Claims**.  In accordance with Section 364(c)(1) of the Bankruptcy Code, with respect to the Initial Advance, the Obligations shall constitute allowed administrative expense claims against Debtor with priority in payment over any and all administrative expenses and all other unsecured claims against Debtor now existing or hereafter arising, of any kind whatsoever, including all administrative expenses of the kind specified in, or ordered pursuant to Sections 503, 507, 546, 726 or any other provision of the Bankruptcy Code (the "Superpriority Claims").  The Superpriority Claims shall be considered administrative expenses allowed under Section 503(b) of the Bankruptcy Code (including for purposes of Section 1129(a)(9)(A) of the Bankruptcy Code), shall be against Debtor and shall be payable from and have recourse to all property of Debtor and its estate, whether existing prior to the Petition Date or acquired or arising thereafter, and now existing or hereafter acquired or arising, and all proceeds thereof and recoveries related thereto; provided, however, that such Superiority Claims shall be subject to the Carve Out and shall not be collectible from Avoidance Actions.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

10

Active\121834933.v1-4/21/21

9.      **DIP Liens**.  As more fully set forth in the Loan Documents, as security for the Obligations under the Loan related to the Initial Advance, Lender is hereby granted (effective as of the Petition Date, without the necessity of the execution by Debtor or the filing or recordation of mortgages, security agreements, lock box or control agreements, mortgages, financing statements, or any other instruments or otherwise) valid, binding, continuing, enforceable and fully perfected, security interests in, and Liens upon the Collateral, whether existing prior to the Petition Date or acquired or arising thereafter, and whether now existing or hereafter acquired or arising, of any nature whatsoever; provided, however, that such Liens shall be subject to the Carve Out.  The Liens shall consist of:

10.     First Lien on Unencumbered Real Property.  Pursuant to Section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first priority Lien and security interest upon all Collateral that is not otherwise subject to a Lien;

11.     Liens Senior to Other Liens.  Pursuant to Section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable and fully perfected first priority senior priming security interest in and senior priming Lien on all Collateral that is subject to existing Liens;

(a)     Except as expressly permitted under the Loan Documents, the Liens and the Superpriority Claims related to the Initial Advance, as applicable: (i) shall not be made subject to or *pari passu* with (A) any lien, security interest, or claim heretofore or hereinafter granted in any of the Chapter 11 Case or any Successor Case, and shall be valid and enforceable against Debtor, its estate, any trustee or other estate representative appointed or elected in the Chapter 11 Case or any Successor Case and/or upon the dismissal of any of the Chapter 11 Case or any Successor Case, (B) any lien that is avoided and preserved for the benefit of Debtor and its estate under Section 551 of the Bankruptcy Code or otherwise, (C) any intercompany or affiliate lien or claim, and/or (D) any lien arising after the Petition Date; and (ii) shall not be subject to Sections 506(c), 510, 549, 550 or 551 of the Bankruptcy Code.

12.     **Automatic Effectiveness of Liens**.  The DIP Loan Agreement and this Interim Financing Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection and priority of the Liens authorized herein without the necessity of filing or recording

11

Active\121834933.v1-4/21/21

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the Liens or to entitle the Liens to the priorities granted herein.

13.     Notwithstanding the foregoing, Debtor is authorized to execute and deliver to Lender all financing statements, security agreements, notices of liens and other similar documents as Lender may request to grant, preserve, protect and perfect the validity and priority of the Liens authorized herein; provided, however, that notwithstanding anything to the contrary in this Interim Financing Order, the DIP Loan Agreement or any other Loan Document, no such filing or recordation shall be necessary or required to perfect the Liens, and neither Debtor nor any subsidiary or affiliate of a either Debtor shall be required to execute or deliver any mortgage, authorize any fixture filing, execute or deliver any agreement providing "control" as defined in Sections 9-104, 9-105, 9-106 and 9-107 of the Uniform Commercial Code as in effect in any relevant jurisdiction or undertake any registration in respect of assets subject to a certificate of title in order to perfect the Liens in any portion of the Collateral, including any and all cash wherever located or held, and all such Liens and security interests are nonetheless hereby deemed fully and automatically perfected.  Lender may, in its sole discretion, file such financing statements, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of Section 362 of the Bankruptcy Code in order to do so; and all such financing statements, security agreements, notices of liens and other similar documents shall be deemed to have been filed or recorded on the Petition Date.  Lender, in its sole discretion, may, but is not required to, file a copy of this Financing Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which Debtor or Guarantors have real or personal property and, in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Financing Order.

14.     The Liens related to the Initial Advance and granted to Lender by this Interim Financing Order shall not be subject to challenge and shall attach and become valid, binding, continuing, fully-perfected, enforceable, effective and non-avoidable by operation of law as of the

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

12

Active\121834933.v1-4/21/21

Petition Date, having the priority set forth in Paragraphs 8 and 9 of this Interim Financing Order, without the need for any further action by Debtor, Lender or any other Person and without the necessity of execution by Debtor, or the filing or recordation, of any financing statements, mortgages, security agreements, lock box or control agreements or any other documents or instruments or the taking of any other actions.  Debtor, upon the request of Lender (i) shall enter into a deed of trust in recordable form on terms reasonably satisfactory to Lender with respect to any Collateral, (ii) authorize Lender to file and record such financing statements and fixture filings with respect to any Collateral identified by Lender, and (iii) take any such other action as required by Lender with respect to the Collateral identified by Lender in order to perfect the Liens granted to Lender hereby.  Lender is authorized and the automatic stay is modified to the extent necessary to file or record such documents in its sole discretion, in which event, all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Financing Order.

15.    **Adequate Protection Payments**.  So long as there is no Default or Event of Default under this Interim Financing Order, the DIP Loan Agreements, or any other Loan Document, the Debtor is authorized and directed to provide to the Prepetition Secured Creditors monthly adequate protection payments as set forth in the Budget in a monthly amount not greater than (i) $12,500 with respect to Romspen, and (ii) $5,000 with respect to Apollo (the "Prepetition Adequate Protection Payments").  Notwithstanding the foregoing, to the extent the Court enters a final and non-appealable order that determines, pursuant to sections 506(a) or (b) of the Bankruptcy Code, that the Prepetition Adequate Protection Payments are not properly allocable to interest on one or more of the respective Potential Liens to which they were made, the Prepetition Adequate Protection Payments may be re-characterized as payment(s) applied to the principal amount of the respective Potential Liens.

16.    **No Further Consents**.  To the fullest extent permitted by the Bankruptcy Code or applicable law, any provision of any loan document, easement, use agreement, proffer, covenant, license, contract, organizational document or other instrument or agreement that requires the consent of any party or the payment of any fees or obligations to any governmental entity or non-

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

13

governmental entity in order for the Debtor to pledge, grant, mortgage, sell, assign or otherwise transfer any fee or leasehold interest or the proceeds thereof or any other Collateral is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code and shall have no force or effect with respect to the Liens on such leasehold interests or such other Collateral or the proceeds of any assignment and/or sale thereof by any Debtor in favor of Lender in accordance with the terms of the Loan Documents and this Interim Financing Order.

17.    **Marshaling, Waiver of 506(c) Claims and Waiver of Equities**.  Lender shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral, and all proceeds thereof shall be received and used in accordance with the Interim Financing Order.  Lender shall (i) be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equity of the case" exception under Section 552(b) shall not apply to Lender with respect to proceeds, products, offspring, or profits of any of the Collateral, and (ii) not be subject to any surcharge claim under Sections 506(c) or 105(a) of the Bankruptcy Code or otherwise, for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by Lender upon the Collateral or and no costs or expenses of administration that have been or may be incurred in the Chapter 11 Case at any time shall be charged against Lender or any of its claims or Liens, and Debtor hereby irrevocably waive any such claims.

18.    **Section 552 and 726 Waivers**.  Neither Debtor nor any other Person shall assert any claim or right under Section 552 and 726 of the Bankruptcy Code or otherwise seek to avoid the imposition of Lender's Liens on any property acquired by Debtor or its estate or to seek to surcharge any costs or expenses incurred in connection with the preservation, protection or enhancement of, or realization by, Lender upon the Collateral.

19.    **Restrictions on Granting Post-Petition Liens**.  No Lien having a priority superior to, *pari passu* with, or junior to the Liens granted by this Interim Financing Order to Lender shall be granted or permitted by any order of this Court heretofore or hereafter entered in these Chapter 11 Case while any portion of the Loan or any Obligations under the Loan Documents is outstanding unless Lender has consented thereto in writing in its sole and absolute discretion.   Except as

14

Active\121834933.v1-4/21/21

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1  expressly permitted by this Interim Financing Order and the Loan Documents, Debtor will not, at

2  any time during these Chapter 11 Case, grant mortgages, security interests or Liens in the Collateral

3  (or any portion thereof) to any other parties pursuant to Section 364(c) or (d) of the Bankruptcy

4  Code or otherwise.

5       20.    **Automatic Stay**.  The automatic stay of Section 362 of the Bankruptcy Code shall

6  have been modified, amended, annulled and terminated: (i) to permit the creation and perfection of

7  Lender's Liens and security interests, as more fully set forth in the Loan Documents and this

8  Interim Financing Order and (ii) to permit Lender's enforcement of all rights and remedies granted

9  to Lender under the Loan Documents, the Inteirm Financing Order and applicable state and federal

10  law, including without limitation the exercise of any prejudgment remedies by Lender and

11  foreclosure by Lender under the Loan Documents upon an Event of Default under the Loan

12  Documents, all without further order of the Bankruptcy Court.

13       21.    As provided for in the DIP Loan Agreement and without further order from this

14  Court, all automatic stays, including the automatic stay provisions of Section 362 of the Bankruptcy

15  Code, are hereby vacated, terminated, and modified so that, upon and after the occurrence of an

16  Event of Default, Lender can immediately exercise all of its rights and remedies in respect of the

17  Collateral in accordance with this Interim Financing Order and the Loan Documents, as applicable.

18  Upon the occurrence of an Event of Default, automatically and without further notice by or action

19  of Lender or any other person, and without the necessity of notice to, the consent of or approval of

20  the Bankruptcy Court or any other person: (i) the outstanding balance of the Loan, including all

21  outstanding principal, accrued but unpaid interest and all other Obligations required to be paid

22  under the Loan Documents, shall become immediately due and payable in full, with interest

23  accruing thereon at the Default Rate at all times thereafter until paid in full, (ii) Lender may apply

24  all amounts received by Lender in such order and manner as Lender may determine in its sole and

25  absolute discretion, and (iii) Lender may exercise, without further order of the Bankruptcy Court,

26  any rights and remedies provided to Lender under the Loan Documents, applicable federal, state

27  and local law, or in equity, including without limitation, foreclosure on the Collateral.

28

15

22.     The rights and remedies of Lender upon an Event of Default are cumulative and not exclusive of any rights or remedies that Lender may have under the Loan Documents or otherwise. Debtor shall cooperate fully with Lender in its exercise of rights and remedies against the Collateral.

23.     Upon an Event of Default, Debtor shall not have the right to contest the enforcement of the remedies set forth in this Interim Financing Order and the Loan Documents on any basis other than an assertion that no Event of Default has occurred, and, except with respect to such an assertion, no party-in-interest shall have the right to enjoin any such enforcement under Section 105 of the Bankruptcy Code or otherwise or to seek any injunctive relief inconsistent with the provisions of this Interim Financing Order or the Loan Documents.  Following the giving of written notice by Lender of the occurrence of an Event of Default under the Loan Documents, Debtor may seek an emergency hearing before this Court; provided, however, that the only issue that may be raised by any party in opposition to the actions proposed or available to be taken by Lender upon an Event of Default, including foreclose on the Collateral, shall be whether, in fact, an Event of Default has occurred.

24.     This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this DIP Loan Agreement.

25.     To the extent deemed appropriate by Lender in its sole and absolute discretion or if requested by a title company, upon an Event of Default under the Loan Documents, Lender is hereby authorized to file an *ex parte* application and to obtain entry of an *ex parte* order of the Bankruptcy Court confirming that the automatic stay has been vacated, terminated and modified to allow Lender to pursue its remedies under the Loan Documents, including without limitation, foreclosure or the Collateral.

26.     **No Creation or Evidence of Liability to Third Parties or Alter Ego Relationship**. Lender shall not be found or deemed to be an alter ego of any Debtor, in a partnership of any kind with any Debtor, in a principal-agent relationship with any Debtor or otherwise liable for any liabilities of any Debtor as a result of Lender deciding to advance the Loan to Debtor, negotiating and entering into the Loan Documents, consenting to the Interim Financing Order, administering

16

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

any loans, or taking any other actions permitted by the Loan Documents, and Debtor shall not be found or deemed to be a mere instrumentality of Lender as a result of the foregoing, and no such action (or conduct taken in furtherance of or comprising an integral part of any such action) shall be admissible in any proceeding as evidence that Lender is the alter ego, partner, principal of, or otherwise liable for any liability of any Debtor or that any Debtor is a mere instrumentality of Lender.

27.    **Indemnification**.    Debtor is hereby authorized and directed on an interim basis to indemnify Lender (and its directors, officers, members, managers, employees, agents, representatives, attorneys, consultants, and advisors) against any liability arising in connection with the Loan Documents, to the extent set forth in the Loan Documents.  All fees, costs, expenses and indemnities of Lender required herein and in the Loan Documents to be paid or reimbursed by Debtor shall be secured by the Collateral and afforded all of the priorities and protections afforded to the Obligations under this Interim Financing Order and the Loan Documents.

28.    Without limiting the foregoing or the indemnity provisions in the DIP Loan Agreement, Lender shall not have any liability (whether direct or indirect or in contract, tort or otherwise) to Debtor or any shareholder or creditor of the foregoing for or in connection with the transactions contemplated by the DIP Loan Agreement and the other Loan Documents, except to the extent such liability is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted from such Lender's gross negligence or willful misconduct; provided that in no event shall Lender be liable on any theory of liability for any special, indirect, consequential or punitive damages.  The foregoing indemnity includes indemnification for Lender's exercise of discretionary rights granted under, and in accordance with, this Interim Financing Order and the other Loan Documents.  In all such litigation, or the preparation therefor, Lender shall be entitled to select its own counsel or other professionals and, in addition to the foregoing indemnity, Debtor agree to promptly pay the reasonable fees and expenses of such counsel or other professionals, unless such claim, damage, loss, liability or expense is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted from Lender's gross negligence or willful misconduct.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

17

Active\121834933.v1-4/21/21

29.    **Binding Effect**.  The provisions of this Interim Financing Order shall be binding upon and inure to the benefit of Lender, Debtor, the Creditors Committee, any other official committee or estate representative appointed in any of the Chapter 11 Case, and their respective successors and assigns (including any Chapter 7 or Chapter 11 trustee hereafter appointed or elected for the estates of Debtor , an examiner appointed pursuant to Section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of any Debtor or with respect to the property of Debtor's estate).  To the extent permitted by applicable law, this Interim Financing Order shall bind any trustee hereafter appointed for the estate of the Debtor, whether in these Chapter 11 Case or in the event of the conversion of any of these Chapter 11 Case to a liquidation under Chapter 7 of the Bankruptcy Code.  Such binding effect is an integral part of this Interim Financing Order.

30.    **No Waiver**.  The failure at any time of Lender to require strict performance by Debtor of any provision of this Interim Financing Order, or to seek relief or otherwise exercise its rights and remedies under this Interim Financing Order, the DIP Loan Agreement or the other Loan Documents or otherwise, shall not prejudice or constitute a waiver of any of Lender's rights hereunder, thereunder, or otherwise.  None of the rights or remedies of any party under this Interim Financing Order shall be deemed to have been amended, modified, suspended, or waived unless such amendment, modification, suspension, or waiver is in writing and signed by the party against whom enforcement is sought.  No consents required hereunder by Lender shall be implied by any inaction or acquiescence by Lender.

31.    **Survival**.  The provisions of this Interim Financing Order and any actions taken pursuant thereto shall survive the entry of any order: (i) confirming any plan of reorganization or liquidation in this Chapter 11 Case (and, to the extent not satisfied in full in cash, the Obligations shall not be discharged by the entry of any such order, pursuant to Section 1141(d)(4) of the Bankruptcy Code, Debtor having hereby waived such discharge), (ii) converting this Chapter 11 Case to a Chapter 7 case, or (iii) dismissing any of this Chapter 11 Case.  The terms and provisions of this Interim Financing Order, as well as the Superpriority Claims and the Liens granted pursuant to this Interim Financing Order and the Loan Documents, shall continue in full force and effect

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

18

Active\121834933.v1-4/21/21

notwithstanding the entry of any such order.  The Superpriority Claims and the Liens granted pursuant to this Interim Financing Order shall maintain their priority as provided by this Interim Financing Order and the Loan Documents, and to the maximum extent permitted by law, until all of the Obligations are satisfied and paid in full in cash and discharged.  In no event shall any plan of reorganization be allowed to alter the terms of the Loan Documents without the written consent of Lender in its sole and absolute discretion.  Unless the Obligations shall have been satisfied and paid in full in cash, it shall constitute an Event of Default if Debtor seek, or if there is entered, (i) any modification of this Interim Financing Order without the prior written consent of Lender, and no such consent shall be implied by any other action, inaction or acquiescence of Lender, or (ii) an order converting or dismissing any of these Chapter 11 Case.

32.    **Modifications of Loan Documents**.  Debtor and Lender are hereby authorized to implement, in accordance with the terms of the Loan Documents, any non-material modifications of the Loan Documents (including without limitation, any change in the number or composition of Lender) without further order of this Court upon five (5) Business Days' notice to any Creditors Committee.

33.    **Insurance Policies**.  Debtor shall comply with the insurance requirements set forth in the Loan Documents.  Additionally, until all of the Obligations are satisfied and paid in full in cash, Lender shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee, as applicable, on each insurance policy maintained now or in the future by Debtor which in any way relates to the Collateral.  Notwithstanding the foregoing, to the extent provided for in the Loan Documents, Debtor is authorized and directed to take any actions that Lender shall request to have Lender added as an additional insured and loss payee on each insurance policy.

34.    **Protection Under Section 364(e)**.  If any or all of the provisions of this Interim Financing Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect the (i) validity of any Obligations owing to Lender incurred prior to the actual receipt by Lender of written notice of the effective date of such reversal, modification, vacation or stay, or (ii) validity or enforceability of any claim, Lien, security interest or priority

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

19

authorized or created hereby or pursuant to the Loan Documents with respect to any Obligations. Notwithstanding any such reversal, modification, vacation or stay, the incurrence of Obligations by Debtor prior to the actual receipt by Lender of written notice of the effective date of such reversal, modification, vacation or stay, shall be governed in all respects by the provisions of this Interim Financing Order and the other Loan Documents, and Lender shall be entitled to all of the rights, remedies, protections and benefits granted under Section 364(e) of the Bankruptcy Code, this Interim Financing Order, and the Loan Documents with respect to the incurrence of Obligations under the Loan Documents.

35.    **Effect of Dismissal of Chapter 11 Case** .  If this Chapter 11 Case is dismissed, converted or substantively consolidated, such dismissal, conversion or substantive consolidation of this Chapter 11 case shall not affect the rights of Lender under the Loan Documents or this Interim Financing Order, and all of the rights and remedies thereunder of Lender shall remain in full force and effect as if this Chapter 11 Case had not been dismissed, converted, or substantively consolidated.  If an order dismissing this Chapter 11 Case is at any time entered, such order shall provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that: (i) the Liens and Superpriority Claims granted to and conferred upon Lender and the protections afforded to Lender pursuant to this Interim Financing Order and the Loan Documents shall continue in full force and effect and shall maintain their priorities as provided in this Interim Financing Order until all Obligations shall have been paid and satisfied in full (and that such Liens, Superpriority Claims and other protections shall, notwithstanding such dismissal, remain binding on all interested parties); and (ii) to the greatest extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the Liens and Superpriority Claims.

36.    **Choice of Law; Jurisdiction; Standing**.  The Loan and the Loan Documents (and the rights and obligations of the parties thereto) shall be governed by, and construed and interpreted in accordance with, the laws of the State of California, and, to the extent applicable, the Bankruptcy Code.  The Bankruptcy Court shall have exclusive jurisdiction with respect to any and all disputes or matters under, or arising out of or in connection with, either the Loan or the Loan

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Active\121834933.v1-4/21/21

Documents. Lender shall have standing, as a party in interest under Section 1109(b) of the Bankruptcy Code, to raise and appear and be heard on any issue in the Chapter 11 Case.

37.    **Order Effective**.    This Interim Financing Order shall take effect immediately notwithstanding anything to the contrary prescribed by Bankruptcy Rules 4001 and 6004 or other applicable law.

38.    **No Requirement to Accept Title to Collateral**.    Lender shall not be obligated to accept title to any portion of the Collateral in payment of the indebtedness owed to Lender by Debtor in lieu of payment in cash or cash equivalents, nor shall Lender be obligated to accept payment in cash or cash equivalents that is encumbered by any interest of any person or entity other than Lender.

39.    **Controlling Effect of Interim Financing Order**.    To the extent any provision of this Interim Financing Order conflicts or is inconsistent with any provision of the Motion, the provisions of this Interim Financing Order shall control.  To the extent any provision of the Motion or the Interim Financing Order conflicts with the Loan Documents, the Loan Documents shall control.

40.    **Limitation of Liability**.    In determining to enter into the Loan Documents and in making the Loan pursuant to this Interim Financing Order, the DIP Loan Agreement, or the other Loan Documents, Lender in its capacity as such shall not be deemed to be in control of the operations Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S. §§ 9601 *et seq.*, as amended, or any similar federal or state statute).  Furthermore, nothing in this Interim Financing Order, the DIP Loan Agreement or the other Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon Lender of any liability for any claims pursuant to environmental law arising from the prepetition or postpetition activities of any of the Debtor.  Lender in its capacity as such or any its affiliates or successors are not successors to Debtor or its estate by reason of any theory of law or equity, and Lender or any of its affiliates or

Active\121834933.v1-4/21/21

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1  successors shall not assume or in any way be responsible for any liability or obligation pursuant to

2  environmental law of any of the Debtor and/or its estate.

3      41.    **Retention of Jurisdiction**.  The Court shall retain jurisdiction to hear and determine

4  all matters arising from the implementation of this Interim Financing Order.

5      42.    **Final Hearing**.  The final hearing (the "Final Hearing") to consider entry of the

6  Final Financing Order and final approval of the DIP Loan Agreement is scheduled for _____,

7  2021 at _____:00 _____.m. Pacific time at the United States Bankruptcy Court for the Central

8  District of California.  If no objections to the relief sought in the Final Hearing are filed and served

9  in accordance with this Interim Financing Order, no Final Hearing may be held, and a separate Final

10  Financing Order may be presented by the Debtor and entered by this Court.

11      43.    **Final Hearing Notice**.  On or before _____, 2021, the Debtors shall

12  serve, by United States mail, first-class postage prepaid, copies of this Interim Final Order and

13  notice of the Final Hearing (the "Final Hearing Notice") on: (i) the Office of the U.S. Trustee; (ii)

14  the Debtors' twenty (20) largest unsecured creditors; (iii) the Lender; (iv) the Prepetition Secured

15  Creditors; (v) the parties having been given notice of the Interim Hearing; and (vi) any party which

16  has filed prior to such date a request for notices with this Court.  The Final Hearing Notice shall

17  state that any party in interest objecting to the entry of the proposed Final Financing Order shall file

18  written objections with the Clerk of the Bankruptcy Court no later than _____, 2021, which

19  objections shall be served so that the same are received on or before such date by: (a) proposed

20  counsel to the Debtor, Fox Rothschild LLP, 10250 Constellation Boulevard, Suite 900, Los

21  Angeles, California 90067, Attn: Brett A. Axelrod, (b) counsel to the Lender, Garman Turner

22  Gordon LLP, 7251 Amigo Street, Suite 210, Las Vegas, Nevada, 89118, Attn: Christine A. Murphy,

23  and (c) the Office of the United States Trustee, 915 Wilshire Blvd, Suite 1850, Los Angeles,

24  California 90017; and any reply filed by the Debtor or any party supporting entry of the Final

25  Financing Order shall be filed with the Clerk of the United States Bankruptcy Court for the Central

26  District of California, in each case to allow actual receipt of the foregoing no later than

27  _____, 2021.

28      **IT IS SO ORDERED.**

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

22

1
###

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

23

Active\121834933.v1-4/21/21

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Fox Rothschild, LLP 1980 Festival Plaza Drive, Suite 700, Las Vegas, NV 89135

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS: (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING; (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS; (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED CREDITORS; (IV) MODIFYING THE AUTOMATIC STAY; AND (V) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 04/21/2021 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Brett A Axelrod**    baxelrod@foxrothschild.com, pchlum@foxrothschild.com;msteen@foxrothschild.com;amwilson@foxrothschild.com
- **Brian D Fittipaldi**    brian.fittipaldi@usdoj.gov
- **United States Trustee (ND)**    ustpregion16.nd.ecf@usdoj.gov

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 04/22/2021, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 04/21/2021 | Patricia Chlum | /s/Patricia Chlum |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**Via Electronic Mail Service:**

| | |
|---|---|
| Apollo Development | ggreen2358@gmail.com |
| Bethel Engineering | russ@dbaengineers.com |
| Capital Pacific Dev Group | michaelo@cpdginc.com |
| County of Santa Barbara PD | dalazaer@co.santa-barbara.ca.us |
| County of Santa Barbara Tax | ttcpapg@co.santa-barbara.ca.us |
| Dale Martin | kalikalikalima@yahoo.com |
| David F. Stone | stonearcheo@yahoo.com |
| Dudek | jdavis@dudek.com |
| Garman Turner Gordon | tgray@Gtg.legal<br>cmurphy@Gtg.legal |
| Hamner Jewell & Assoc. | ljewell@hamner-jewell.com |
| Hollister & Brace | pcandy@hbsb.com |
| Kear Groundwater | accounts@keargroundwater.com |
| Nossaman LLP | dgraeler@nossaman.com<br>jjaffe@nossaman.com |
| PleinAire Design Group | kjsmall@pleinairedg.com |
| Rancho Maria Golf Club | ashaverdian@nossaman.com |
| Romspen Mortgage | StevenMucha@romspen.com |
| Stantec | Dennis.Lammers@stantec.com |
| TW Land Planning & Development | twhite@twlandplan.com |
| United States Trustee | brian.fittipaldi@usdoj.gov |

121900917.v1

## SERVICE VIA FEDERAL EXPRESS

Apollo Development, LLC
Attn: Gary Greenberg
1420 S. Filbert Way
Denver, CO 80222

Artin N. Shaverdian
Nossaman LLP
777 South Figueroa, 34th Floor
Los Angeles, CA 90017

Bethel Engineering
Russ Garrison
2624 Airpark Drive
Santa Maria, CA 93455

Capital Pacific Development Group
Attn: Gavin Moores
209 W. Alamar Ave., Ste. A
Santa Barbara, CA 93105

County of Santa Barbara
105 E. Anapamu St., Room 109
Santa Barbara, CA 93101

County of Santa Barbara
Planning and Development
Attn: David Lazaer
123 East Anapamu
Santa Barbara, CA 93101

Dale Martin
181 Seminole Lane
Lake Havasu City, AZ 86404

David F. Stone Planning
27 West Constance Ave.
Santa Barbara, CA 93105

David Graeler
Nossaman LLP
777 South Figueroa, 34th Floor
Los Angeles, CA 90017

121898407.v1

Dudek
Attn: John Davis
605 Third Street
Encinitas, CA 92024

Forma Company
3050 Pullman St.
Costa Mesa, CA 92626

Hamner Jewell & Associates
Attn: Lillian Jewell
530 Paulding Circle, Ste. A
Santa Barbara, CA 93120

Hollister & Brace P.C.
Attn: Peter Candy
1126 Santa Barbara St.
Santa Barbara, CA 93101

Jill N. Jaffee
Nossaman LLP
777 South Figueroa, 34th Floor
Los Angeles, CA 90017

Kear Groundwater
Attn: Jordan Kear
P.O. Box 2601
Santa Barbara, CA 93120

PleinAire Design Group
Attn:  Kevin Small
3203 Lightning St., Suite 201
Santa Maria, CA 93455

Rancho Maria Golf Club
1950 Highway 1
Santa Maria, CA 93455

Romspen Mortgage Ltd. Partnership
Attn: Wesley Roitman
162 Cumberland Street, Suite 300
Toronto ON M5R 3N5 Canada

121898407.v1

Romspen Mortgage Ltd. Partnership
c/o Trevor A. Jenkins
Bryan Cave Leighton Paisner LLP
1200 Main Street, Suite 3800
Kansas City, MO 64105-2122

Romspen Mortgage Ltd. Partnership
c/o Lorna Miller
Bryan Cave Leighton Paisner LLP
3161 Michelson Drive, Suite 1500
Irvine, CA 92612-4414

Stantec
Attn: Dennis Lammers
13980 Collections Center Dr.
Chicago, IL 60693

TW Land Planning & Development, LLC
Attn:  Troy White
195 S. Broadway Street, Suite 209
Santa Maria, CA 93455

Brian D Fittipaldi
United States Department of Justice/OUST
1415 State Street, Suite 148
Santa Barbara, CA 93101

121898407.v1